Hole and wife vs. Robbins and others.

*November 12 — November 22, 1881.*

*Who inherits from adopted child?*

Under the laws of this state regulating the descent of real property (ch. 92, R. S. 1858, as amended by ch. 61 of 1868 and ch. 121 of 1870), and those providing for the adoption of children under fourteen years of age (ch. 49, R. S. 1858, as amended, secs. 5–7), the persons by whom a child is adopted do not inherit from him as from a natural child, but his real estate follows the general law of descent.

APPEAL from the Circuit Court for *Richland* County.

The case is thus stated by Mr. Justice TAYLOR:

" On the 13th of May, 1869, an order was made by the county court of Richland county declaring John Robbins the adopted child of the plaintiffs, *Harrison Hole* and his wife, *Lydia Ann Hole.* It is admitted, for the purposes of this trial, that such adoption was in all respects in accordance with the provisions of chapter 49, R. S. 1858, as amended by chapter 136, Laws of 1865, and chapter 140, Laws of 1858 (1 Tay. Stats., 785–6); and that' by such order of adoption he acquired all the rights and became subject to all the liabilities of an adopted son, under the provisions of said chapter. It appears that after his adoption he was known by the name of John A. Hole; that at the date of his adoption by the appellants he was about nine months old; and that the natural parents of said John Robbins or John A. Hole both died some time in the year 1868, and by their death he became the owner, by inheritance, of the N. E. ¼ of the N. E. ¼ of section 6, and also two acres of land in the southwest corner of the N. W. ¼ of the N. W. ¼ of section 5, all in township 11 north, range 1 east, in this state. On the 11th of October, 1878, John A. Hole died seized of the said lands above described, leaving no will, and no descendants or brother or sister or widow surviving him. Administration of his estate was had

in the county court of Richland county, and a final order of distribution was made by said court March 16, 1880, by which said estate was awarded to the respondents, who are the brothers and sisters of the natural father of said deceased. From such order of distribution the plaintiffs appealed to the circuit court for Richland county. The circuit court affirmed the order of the county court; and from such order of affirmance the plaintiffs appealed to this court."

*E. C. Wulfing,* for the appellants:

The statute (R. S. 1858, ch. 49) is very explicit in creating a complete change of relationship, and in transferring all the rights of a natural parent to the parent by adoption, and is equally explicit in taking away all the rights of a parent from the natural parent. The general words of the statute should receive a general construction. 28 Wis., 43. Inheritance is one of the "incidents and consequences" of the natural relation of parent and child. Schouler's Dom. Rel., 314. See *Lunay v. Vantyne,* 40 Vt., 501; *Rives v. Sneed,* 25 Ga., 612.

For the respondents there was a brief by *Black & Burnham,* and oral argument by *Mr. Black:*

The statute is in derogation of the common law, and must be strictly construed. *Sullivan v. La C. & M. St. Packet Co.,* 10 Minn., 386; *Blackman v. Wheaton,* 13 id., 326; *Hollman v. Bennett,* 44 Miss., 323; *Orton v. Noonan,* 29 Wis., 541. At the time of the adoption of the child in this case, the appellants were of full age, of contracting mind, and voluntarily assumed the burden of bringing up and educating the child and making it their own. On the other hand, the child, then only about two years old, had no contracting mind, no legal discretion. Could its guardian, then, by such proceedings, without any notice to respondents, change the track of descent, discard its blood relations as heirs, and make those of foreign blood its heirs? Collusion and fraud might follow, and the child might be placed in the hands of its most bitter enemies, and even those interested in its death. The whole

object and spirit of the statute is to provide parents for, and not heirs of, the child. Had the appellants desired to be made heirs of the child, they should have proceeded under secs. 3 and 4, ch. 140, Laws of 1858 (R. S. 1858, p. 389), this being the only statute for establishing heirship. The general words of sec. 6, ch. 49, R. S. 1858, must be held to be restricted to the rights before granted in such section.

TAYLOR, J. Upon this appeal it is insisted by the learned counsel for the appellants, that, under the provisions of chapter 49, R. S. 1858, as amended, the adopted parents of John Robbins, afterwards known as John A. Hole, became and are his heirs-at-law, and entitled to inherit upon his death the real estate of which he died seized, although such real estate came to him by descent from his natural father. This claim is based upon the provisions of sections 5, 6 and 7 of said chapter, which read as follows:

" Sec. 5. If upon such petition, so presented and consented unto as aforesaid, the county judge shall be satisfied of the identity and relations of the persons, and that the petitioner, or, in case of husband and wife, that the petitioners are of sufficient ability to bring up the child and furnish suitable nurture and education, having reference to the degree and condition of its parents, and that it is fit and proper that such adoption should take effect, he shall make an order setting forth the said facts, and ordering that from and after the date of the order such child should be deemed and taken, to all legal intents and purposes, the child of the petitioner or petitioners.

" Sec. 6. A child so adopted as aforesaid, shall be deemed, for the purpose of inheritance and succession by such child, custody of the person and right of obedience by such parent or parents by adoption, and all other legal consequences and incidents of the natural relation of parents and children, the same to all intents and purposes as if such child had been

born in lawful wedlock of such parent or parents by adoption, saving only that such child shall not be deemed capable of taking property expressly limited to the heirs of the body or bodies of such petitioner or petitioners.

"Sec. 7. The natural parent or parents of such child shall be deprived by such order of adoption of all legal rights whatsoever as respects such child, and such child shall be freed from all legal obligations of maintenance and obedience as respects such natural parent or parents."

It is claimed by the learned counsel for the appellants, that the general words in section 5 which declare the *status* of the child adopted, viz., "he shall be deemed and taken, to all legal intents and purposes, the child of the persons adopting him," and especially the words in section 6 which declare that "he shall be deemed, for the purposes of inheritance and succession by such child, custody of the person and right of obedience by such parent or parents by adoption, and all other legal consequences and incidents of the natural relation of parents and children, the same to all intents and purposes as if such child had been born in lawful wedlock of such parents by adoption, saving," etc., by fair construction must be held to confer upon the persons adopting the child all the rights they would have had if the child so adopted had been born to them in lawful wedlock, and to deprive the natural father and kindred of all rights of inheritance or succession from such adopted child.

Both by the common law and by the statutes of this state inheritance is confined to the blood of the deceased, the only exception made being in favor of the wife of the deceased. See chapter 92, R. S. 1858, as amended by chapter 61, Laws of 1868, and chapter 121, Laws of 1870 (2 Tay. Stats., 1169). Under subdivision 3 of section 1 of the general law above cited, the respondents were clearly entitled to the real estate of which the deceased, John A. Hole, died seized; and unless the law above quoted in regard to the adoption of children

takes away this right, the judgment of the county and circuit courts was clearly right.

After carefully considering all the provisions of the law regulating the adoption of children, we are of the opinion that there was no intention on the part of the legislature to change the general law upon the subject of inheritance from an adopted child. It is very clear that the legislature did not intend to give that effect to the words used in section 5. If the words used in that section were intended to fix the rights of the child adopted, and declare him to be the child of the adopted parents, with all the mutual rights of a child by blood, as inheritance by the child from the adopted parents and by the parents from the child, there would have been no necessity for making the declaration as to the rights of the child in section 6. The legislature deemed it necessary, in order to give the adopted child the right of inheritance and succession from the adopted parent, to expressly declare that he should have such rights, and so take his case out of the general law of descent, which gives the property to the kindred of the deceased by blood. The other general words, " and all other legal consequences and incidents of the natural relation of parents and children, the same to all intents and purposes as if such child had been born in lawful wedlock," are clearly added with reference to the rights of the child, and not of the adopted parents. The only words which are at all declaratory of the rights of the adopted parent, are the words, " custody of the person and right of obedience by such parent or parents by adoption." It seems to us quite clear that the legislature, which deemed it necessary to declare by express words the right of inheritance by the adopted child from the adopted parents, and not leave such right to be inferred from general words, would have been much more likely to have declared the other proposition also by express words, if it were intended that the adopted parents and their kindred should inherit from the child. The reason for such declaration

would seem to be more necessary than the declaration of the right of inheritance in favor of the child.

The adopting parent is of full age, and enters into the engagement with full knowledge of its effect. The child, in most instances, is entirely unable to comprehend the relationship made by the process of adoption, and can give no legal consent to any change of his rights by such adoption. If the adoption is to work a radical change as to the right of inheritance to his estate, it would seem to require an explicit declaration to that effect. The seventh section, above quoted, which undertakes to define what rights of the natural parents of the child adopted shall be taken away by such adoption, fails entirely in taking away the right of inheritance from such child in case he should die without issue or descendants and leaving no widow. It merely declares that the order of adoption shall deprive the natural parents " of all legal rights whatsoever as to the child, and the child shall be freed from all legal obligations of maintenance and obedience as respects his natural parents." These words refer solely to the right of the natural parent to the personal control, education and maintenance of the child. The rights of which the natural parents are deprived respect the child itself, and not his property or their right to inherit from him.

The statute having expressly declared that the adopted child shall inherit from the adopted parent, and having omitted to declare that the adopted parent shall inherit from the child, we think it must be held, according to the rules of construction, that the general law of inheritance was not intended to be changed in favor of the adopted parent, and that the estate of the adopted child, upon his death without a will, must descend to his kindred of blood as prescribed by section 1, ch. 92, R. S. 1858, as amended. That the word "parents," in subdivision 2 of section 1, ch. 92, means natural parents, and not parents by adoption, cannot be doubted. All the other provisions of the section refer to kindred of the blood of the deceased; and the

word "parents," both by derivation and common understanding, means the natural parents.

After a careful examination, we have been able to find but one case in which a question similar to the one in the case at bar was decided. In the case of *Barnhizel v. Ferrell*, 47 Ind., 335, it was held that, under the law of Indiana upon the subject of adoption, the adopted child inherited from the adopted parents, but that such parents and their kindred by blood do not inherit from the child as against the natural parents and their kindred by blood; and in that case the natural mother was held to inherit property which came to the adopted child by inheritance from the adopted father, as against the claims of a daughter of such adopted father. The statute of Indiana under which this decision was made, provides that the adopted child shall take the name of its adopted parents, and " be entitled to receive all the rights and interest in the estate of the adopted father or mother, by descent or otherwise, that such child would do if the natural heir of such adopted father or mother." And it also provides that " the adopted father or mother shall occupy the same position towards such child that he or she would if the natural father or mother, and be liable for the maintenance, education, and every other way responsible as a natural father or mother." Notwithstanding these provisions, which are substantially like those of our statute, the court held that the right to inherit from the adopted child by the adopted parent or his kindred by blood was not given by the statute, and that even the property which came to the adopted child by inheritance from the adopted father descended to the kindred by blood of such child, and not to the kindred by adoption. This decision was placed upon the ground that, the statute having declared the right of inheritance in favor of the child and not in favor of the adopted father or mother, the general law regulating the descent of property must prevail, and the kindred by blood must take the estate. Similar decisions have been made in Pennsylvania, under similar stat-

utes. *Commonwealth v. Nancrede*, 32 Pa. St., 389; *Schafer v. Eney*, 54 Pa. St., 304.

In Massachusetts, where the law upon the subject of adoption of children was almost in the same language as our statute, the courts have sustained the rights of the adopted child not only as to inheritance and succession, but as to other matters which would pertain to the rights of a child born in wedlock. See *Sewall v. Roberts*, 115 Mass., 262–276; *Burrage v. Briggs*, 120 Mass., 103. These cases uphold the rights of the adopted child to all the rights of a child born in wedlock; but we find no cases in that state where the rights of the adopted parents, under the former statutes, have been passed upon. In 1876 the legislature of Massachusetts passed a new law on the subject of adoption, and in that law apparently recognized the necessity of an express declaration in order to give the adopted parents and their kindred the right to inherit from the adopted child. They. have expressly declared the rights of the adopted parents and their kindred by blood to inherit from the adopted child, and limit such right to such property as the child acquires himself, or by gift or inheritance from his adopting parent or the kindred of such parent; and also provide that the property of such adopted child, received by gift or inheritance from his natural parents or kindred, shall be distributed in the same manner as if no act of adoption had taken place. See Supplement to the General Statutes of Massachusetts, 460, 461. This act places the rights of the parties upon just and equitable grounds. And as it appears that the legislature of this state followed Massachusetts in the adoption of our present law upon the subject of the adoption of children, it would, perhaps, be well to follow that state in the improvement of the same.

In the case at bar, the property which is claimed by the adopted parents came to the child from the natural parents, and justice would seem to demand that it should descend to them or their kindred upon his death; and there being noth-

ing in the statutes concerning the adoption of children which clearly indicates an intention on the part of the legislature to change the order of descent from the adopted child, we must, upon authority and principle, hold that the property descends according to the general law regulating the descent of real estate.    Under that law, there is no dispute as to the right of the natural kindred of the deceased to hold the property as against the adopted parents and their kindred.

*By the Court.*— The judgment of the circuit court is affirmed.