[No. 8132]

RUSSELL ET AL. v. JORDAN ET AL.

ADOPTION OF CHILD. *Effect.* The statutes regulating the adoption of children (Rev. Stat. secs. 526, 529, 7042) make the adopted child the heir of the adopting parent, and the adopting parent the heir of the child if he die without marriage or issue; but the latter provision does not extend to the heirs of the adopting parent.

The children of the adopting father do not inherit from the adopted child. (450)

*Error to Rio Grande County Court.*—Hon. JAMES W. WHITE, Judge.

*On Rehearing.*

Messrs. PALMER & TRUE, Mr. JESSE C. WILEY, and Mr. ALBERT L. MOSES, for plaintiffs in error.

Mr. A. L. JEFFERY, and Mr. EDWIN H. STINEMEYER, for defendants in error.

Mr. JUSTICE SCOTT delivered the opinion of the court:

This is a case to determine heirship. Nathan Russell by his first wife had three children, who are the de-

fendants in error. Subsequent to the death of this wife he was again married to a widow with a minor child, named John Albers. By this marriage Russell had three children, who are the plaintiffs in error here. The second wife died and thereafter Russell, in the manner provided by law, adopted her child, John Albers, who took the name of John Albers Russell. Russell married a third time and afterwards died without issue from the third marriage. The estate of Russell, aside from the widow's share, was divided equally between all his children, including the adopted son. Later, John Albers Russell, the adopted son, died intestate, unmarried and without issue.

This proceeding is upon error to the county court ordering an equal division of the estate of John Albers Russell between the six children of Nathan Russell.

It is the contention of plaintiffs in error, that being related by blood, they alone are entitled to participate in the distribution of the estate of John Albers Russell.

It is said that by the common law inheritable interest follows the blood. That adoption was unknown to the common law, and comes from the civil law. That it rests upon statutes entirely, and while these statutes do in a degree modify and change the common law rule of descent and distribution, this change goes no further than the provision of the statute. That the property of John Albers Russell descends, as would the property of any other decedent, to the next of kin, except as our statutes change the line of descent because of his adoption by Nathan Russell. This must be conceded to be a fair statement of the law upon this subject.—*Webb v. Jackson,* 6 Colo. App. 211, 40 Pac. 467.

.It is agreed by counsel that the question here to be determined has not been considered, nor have our adoption statutes been construed in that respect by the ap-

pellate courts of this state. Our statutes upon this subject for consideration here are, Revised Statutes 1908, as follows:

Sec. 526. "A decree of adoption shall be rendered and entered by the court declaring such person the heir at law of the petitioner or petitioners and entitled to inherit from the petitioner or petitioners any or all property in all respects as if it had been petitioners' child born in holy wedlock."

Sec. 529. "The natural parents shall, by such order, be divested of all legal rights and obligations in respect to the child, and the child be free from all legal obligations of obedience and maintenance in respect to them; such child shall be to all intents and purposes the child and legal heir of the person so adopting him or her, entitled to all the rights and privileges and subject to all the obligations of a child begotten in lawful wedlock; but upon the decease of such person and the subsequent decease of such adopted child without issue, the property of such adopting parent shall descend to his or her next of kin, and not to the next of kin of such adopted child."

Sec. 7042. "Legally adopted children shall be to all intents and purposes, children and legal heirs of the person so adopting them, entitled to inherit as fully as children of the foster parents begotten in lawful wedlock, and in case any such adopted child shall die, leaving no husband, wife or children, then the foster parents shall inherit as though such adopted child had been a child of such foster parents born in lawful wedlock."

Sec. 526 was enacted in 1885, and appears to have been adopted bodily from the Ohio statutes. The statute was constructed by the supreme court of Ohio before it was enacted by our legislature. It has been held by this court that prior construction under such circumstances is at least strongly persuasive upon the courts of this state,

for the reason that the presumption is that the law was enacted in the light of the construction given it by the courts of the state from which the statute was taken.

The supreme court of Ohio in an opinion rendered in 1880, in the case of *Upson v. Noble,* 35 Ohio St. 655, in construing the statute that now constitutes our Section 529, Rev. Stat. 1908, said:

"This statute, in so far as it changes the general course of descents and distribution of intestate property, and ignores all merit on account of blood, should be strictly construed. And while we find in its a clear declaration that the adopted child shall be the 'legal heir' of its adopting parents, there is no express provision that it shall be capable of inheriting from any other person, or of transmitting an inheritance to any one. It is true that it is declared to be the 'child,' to all legal intents and purposes, of the adopters, as if begotten in lawful wedlock; but if the relation thereby created was intended to bring the parties to it within the operation of the general statute regulating descents and distribution of estates, the additional words, 'and legal heir of his or her adopter or adopters,' would have been entirely superfluous. Now, as we cannot assume that these additional words were not intended to have an operation, which the statute without them would not have, their use suggests that the word 'child' was not used in the sense of 'heir' within the meaning of the general statute relating to descents and distribution. And when we consider the context the truth of the suggestion is made quite palpable. It is declared that by such order the natural parents shall be divested of all legal rights and obligations in respect to such child, and the child shall be free from all legal obligations of obedience and maintenance in respect to them, and shall be, to all intents and purposes, the child  *   *   *  of his or her adopter,

thus showing that the legislature was dealing with personal rights and duties growing out of the relation of parent and child, by transferring them from the natural to the adopted relation.''

The doctrine of this case was later affirmed by the same court in the case of *Phillips v. McConica,* 59 Ohio St. 1, 51 N. E. 445, and wherein further reasons were advanced in support of it. The court said:

''True, section 3140, Rev. Stat. provides that such adopted child 'shall be to all intents and purposes the child and legal heir of the person so adopting him or her, entitled to all the rights and privileges, and subject to all the obligations, of a child of such person, begotten in lawful wedlock.' But this is far from providing that such adopted child shall be the issue of the adopter, and of his blood and of the blood of his ancestors. It was well said in *Upson v. Noble,* 35 Ohio St. 658, that in passing the adopting statute 'the legislature was dealing with personal rights and duties growing out of the relation of parent and child, by transferring them from the natural to the adopted relation.' The statute enables the adopted child to inherit from its adopter, but not through him. The statute does not make the adopted child the heir of the ancestors of its adopter, and the right of the adopted child to inherit cannot be extended beyond where the statute has fixed it. The statute in this regard must be strictly construed, as held in 35 Ohio St. 658. Adoption does not change the law of descent and distribution as to the property of the ancestors of the adopter.—*Quigley v. Mitchell,* 41 Ohio St. 375. The ancestors of the adopter are presumed to know their relatives by blood, and to have them in mind in the distribution of their estates, either by will or descent, but they cannot be expected to keep informed as to adoption proceedings in the probate courts of the counties of this state; and to

allow an adopted child to inherit from the ancestors of the adopter would often put property into the hands of unheard of adopted children, contrary to the wishes and expectations of such ancestors."

It will be seen that the conclusion reached in these cases, the relation created by adoption is regarded as personal between the adopting parent and adopted child. That while the statute makes the adopted child an heir of the adopting parent, and provides that if the adopted child shall die without marriage or issue, his estate shall go to the adopting parent, the provision does not apply to the heirs of the adopting parent, and in such case the general law of descent applies.

The doctrine of the Ohio cases is supported by the following among other authorities:—*Helms v. Elliott,* 89 Tenn. 446, 14 S. W. 930, 10 L. R. A. 535; *Hockaday v. Lynn,* 200 Mo. 456, 98 S. W. 585; *Boaz v. Swinney,* 79 Kan. 332, 99 Pac. 621; *Hole et al. v. Robbins et al.,* 53 Wis. 514, 10 N. W. 617; *Van Derlyn v. Mack,* 137 Mich. 146, 100 N. W. 278, 66 L. R. A. 437, 109 Am. St. Rep. 669, 4 Ann. Cas. 879.

But the statutes of the several states are widely different in the matter of adoption of children and there is likewise striking want of uniformity of opinion concerning similar statutes.

The following cases among others, take a contrary view from that adopted in the above cited cases.—*Humphries v. Davis,* 100 Ind. 274, 50 Am. Rep. 788; *Hilpire v. Claude,* 109 Iowa, 159, 80 N. W. 332, 46 L. R. A. 171, 77 Am. St. Rep. 524; *Flannigan v. Howard,* 200 Ill. 396, 65 N. E. 782, 59 L. R. A. 664, 93 Am. St. Rep. 201; *Calhoun v. Bryant,* 28 S. D. 266, 133 N. W. 266; *Swick v. Coleman,* 218 Ill. 33, 75 N. E. 807.

For the reasons above stated, and because of the seeming weight of authority in support thereof, we have adopted the reasoning of the Ohio authorities.

The judgment is reversed.  Former opinion withdrawn.

*In banc.*

Decided December 7, A. D. 1914.  Rehearing granted.  Decided on rehearing April 5, 1915.