[No. 2879. Oct. 27, 1925.]

DODSON et al. v. WARD.

[240 Pac. 991.]

### SYLLABUS BY THE COURT

1. Where, after an adopting parent has died, the adopted child dies without heirs of his body, his relations by blood are entitled to take under the statutory laws of descent and distribution in preference to the father of the adopting parent, in the absence of specific legislative declaration to the contrary in the adoption statute.

---

[1] 1CJ p. 1402 n. 38, 44, 45; p. 1403 n. 46, 47.
[2] 3CJ p. 938 n. 10.

2. Where the case was tried upon an agreed statement of facts, and the findings of fact merely set forth the facts as recited in the agreed statement, such findings not being assailed, and the issues are narrowed to one only, as stated in the ultimate conclusion that "from the foregoing it follows that the plaintiff is entitled to recover as against the defendants as prayed in his complaint," and all the findings and conclusions are incorporated into and made a part of the judgment itself, which contains a general exception, "to all of the foregoing the said defendants object and except," the appellants will not be denied a review merely because separate exceptions were not taken to the conclusions of law.

Appeal from District Court, Torrance County; Mechem, Judge.

Action by James Ward against Bolen R. Dodson and another. Judgment for plaintiff, and defendants appeal. Reversed, with directions.

Fred H. Ayers, of Estancia, for appellants.

E. P. Davies, of Santa Fe, for appellee.

OPINION OF THE COURT

BICKLEY, J. [1] Upon the stipulated facts, the trial court made the following findings of fact and conclusions of law predicated thereon:

"(1) That the real estate described in plaintiff's complaint was entered and filed upon by one Lillian M. Ward, by virtue of and in accordance with the homestead laws of the United States. That at the time said Lillian M. Ward died, as hereinafter set forth, such entry had not been completed by her, but was still in an uncompleted state.

"(2) That the said Lillian M. Ward died intestate within Torrance County, N. M., on or about June 8, A. D. 1910. That the plaintiff James Ward, is the natural father of the said Lillian M. Ward, deceased. That the wife of the said James Ward, being the mother of the said Lillian M. Ward, died intestate prior to the death of the said Lillian M. Ward. That the said Lillian M. Ward was never married, but was at all times during her life a single woman.

"(3) That the said Lillian M. Ward did, on May 4, A. D. 1909, in the probate court of Torrance County, N. M., duly adopt Herbert Rosell Ricks, a minor, who was thereafter called Herbert Rosell Ward. That the said Lillian M. Ward also duly adopted said minor in the state of Colorado, in conformity with the laws of that state. That the said Herbert Rosell Ward died intestate about the year 1912. That at that time he was still an infant and that he did not then have,

and never has had, any brothers or sisters. That Hulda Ricks, sometimes referred to as Mrs. A. M. Ford, being the wife of Mr. Aaron Ford, is the natural mother of the said Herbert Rosell Ricks, who was adopted by Lillian M. Ward, and thereafter known as Herbert Rosell Ward. That during the lifetime of her said son she was divorced from her said husband, the father of said minor, and had been given the absolute care, custody, and control of the said minor son by the court granting said divorce, and that the said Hulda Ricks consented to the adoption by the said Lillian M. Ward.

"(4) That Ralph G. Roberson was, by the probate court of Torrance county, appointed administrator of the estate of Herbert Rosell Ward. That such administrator published notice of his appointment, requiring those having acounts against said estate to present them as required by law. That no claims were filed. That the probate court of Torrance county entered an order signed by the judge thereof, reciting that said minor died intestate, and left as his heir the said Mrs. A. M. Ford, and decreed her to be entitled to his property, being the same land described in the plaintiff's complaint herein. That said order was made a public record of Torrance county before the defendants acquired the land involved herein, and a transcript of such record was introduced in their abstract of title.

"(5) That on December 20, 1916, the said Hulda Ricks, otherwise known as Mrs. A. M. Ford, together with her then husband, executed and delivered to the defendant Bolen R. Dodson a warranty deed for the land in question. That the said Dodson paid a good and sufficient consideration therefor. That the said Bolen R. Dodson has ever since that time been in possession of said land and has paid all taxes due thereon. That said deed was filed for record on the 6th day of January, 1917, in the office of the County Clerk of Torrance county, and was duly recorded in Book A-3 at page 220 of the Deed Records of said county, and that the said Bolen R. Dodson has not conveyed the same by deed or otherwise, except to deliver a mortgage thereon to E. P. Davies.

"(6) That the patent to the above-described land was issued by the United States government subsequent to the death of said Lillian M. Ward. That it was issued to and in favor of her heirs, she being then dead.

"Conclusions of Law.

"(1) That when the said Lillian M. Ward duly adopted Herbert Rosell Ward, the relationship of parent and child between them was created, and they would inherit from each other the same as if they had borne the relationship of natural parent and natural child to each other.

"(2) That, when Hulda Ricks, otherwise known as Mrs. A. M. Ford, the natural mother of Herbert Rosell Ricks, consented to the adoption of him by Lillian M. Ward, she forfeit-

ed, abandoned, and was deprived of any further right to inherit from said child by reason of being his natural mother. She did not regain that right by the death of the child's adoptive mother.

"(3)   That upon the death of the said Herbert Rosell Ward the land in question descended from him to his grandfather, who is the plaintiff herein."

A decree was entered embodying in accordance with said findings and conclusions, decreeing that the plaintiff, the father of the adoptive mother, is the owner of the lands in question, to which decree a general exception was saved.

The question to be determined is, does the natural mother of a person who has been adopted under the adoption laws of this state inherit from such adopted person; the mother being the nearest of kin?

The relationship and rights incident to adoption are created and provided for solely by our statutes in effect at the time of the occurrence of the events mentioned in the findings of fact, and the sections involved on this appeal are as follows:

"Neither a married man, not lawfully separated from his wife, nor a married woman not lawfully separated from her husband, can adopt a child without the consent of the wife or the husband; providing the husband or wife not consenting, is capable of giving such consent." Section 15, Code of 1915.

"A legitimate child cannot be adopted without the consent of its parents, if living together; and if legally separated, the consent of the parent having legal custody of the child must be obtained.   It shall not be necessary to obtain the consent from a father or mother deprived of civil rights or adjudged guilty of adultery or cruelty, and for such cause divorced and deprived of the custody of the child, or adjudged to be an habitual drunkard, or who has been judicially deprived of the custody of the child on account of cruelty to, abandonment and neglect of, the child or of infamous conduct." Section 16, Code of 1915.

"The probate judge must examine all persons appearing before him pursuant to the provisions of this chapter, and if satisfied that the interest of the child or children to be adopted will be promoted by the adoption by applicant, he must make an order declaring the child to be adopted by the applicant and thenceforth to be regarded' and treated in all respects as the child of the person adopting; or if the applicant be such an association or corporation as mentioned in this chapter, the probate judge must make an order declaring

such child or children to be adopted by such association or corporation, and thenceforth such association or corporation to be considered as having the custody and control of such child or children, in place of its natural guardians." Section 22, Code of 1915.

"A child when adopted, shall take the family name of the person adopting. In case of the adoption by an association or corporation, the child adopted shall take such name as the association or corporation shall designate at the hearing at the time of its adoption, which name shall be entered of record in the proceedings of the probate court." Section 24, Code of 1915.

"The parents and relatives of an adopted child are, from the time of its adoption, relieved of all parental duties toward and all responsibility for the child so adopted, and shall have no right to or control over it." Section 25, Code of 1915.

"And those persons adopted or legitimized as children or heirs by virtue of this act, shall be considered under the law as legitimate children in regard to their duties and obligations toward the persons that have adopted or legitimized them, and in respect to them, it being understood that they shall always be subject to be disinherited for the same legal reasons as are now legal heirs." Section 1492, C. L. 1897.

While these sections fix the status of adopting and adopted parties, and declare the rights and obligations of law to the other, no mention is made of the interest that either may have in the estate of the other. This, then, leaves it a question of construction of the statutory provisions above quoted. The precise question presented by this record has not heretofore been considered by this court.

In Barney v. Hutchinson, 25 N. M. 82, 177 P. 890, we said that a child adopted in 1880 by J. W. Barney and Annie C. Barney, his wife, was, on the death of Annie C. Barney, intestate, entitled to share in her estate as though he were her son.

The court said that the statute of adoption then in force was chapter 31, Laws of 1869-70. The section we have quoted from C. L. 1897 was section 5 of that act. The other provisions quoted herein were enacted in 1893 (Laws 1893, c. 32), so the court, in Barney v. Hutchinson, supra, doubtless considered the status of the adopted child as being fixed by section 5 of chapter 31, Laws of 1869-70. Since this last-mentioned act was

not repealed until 1915, we must consider it here. A consideration of that section shows that it was the legislative intent that an adopted child should inherit from the person adopting it, else the Legislature would not have said that—

"They shall always be subject to be disinherited for the same legal reasons as are now legal heirs."

We have no fault to find with the decision in Barney v. Hutchinson, supra. May we go further and say that relations of persons by whom a child was adopted inherit from such child by virtue of the adoption? We are confronted with the task of considering the statutes of descent and distribution and determining how far we may read into that statute the provisions of the statute of adoption. We find that section 1845 (portion of descent and distribution statute), Code of 1915, provides:

"If the intestate leave no issue, the whole of his estate shall go to his wife; if he leaves no wife, the portion which would have gone to her shall go to his parents. If one of his parents be dead, the portion which would have gone to such deceased parent, shall go to the surviving parent."

In Harrison v. Harrison, 21 N. M. 372, 155 P. 356, L. R. A. 1916E, 854, in considering the history of our statutes of descent and distribution, we said:

"The Legislature in 1852 passed an act regulating descents and distribution (Laws 1851-52, p. 358), which was merely a re-enactment of the civil law on this subject in force at the time (C. L. 1884, §§ 1410-1422, 1431—1438). Under this law, parents were the sole heirs of their children, dying without issue or conjugal partners, whether at any time married or not, and brothers were not heirs."

By subsequent changes the governing section came to be what is now section 1845, Code of 1915, above quoted. Up to February, 1887, parents of a person dying without a surviving conjugal partner or descendants, whether such descendant had at any time married or not, took the whole estate. From that date up to February 26, 1889, parents took the whole as formerly, unless there were brothers and sisters. In that event, half. In 1889 what is now section 1845 was passed. So it will be seen from an examination of

our descent and distribution statute that the dominant idea of blood relationship is the lodestone of inheritable capacity, except where changed by statute.

Our Code, § 1853, declares:

"The relation of consanguinity being the relation or connection which exists between persons united by the ties of blood shall be considered in the direct and collateral lines, for civil purposes, in the computation thereof."

Throughout the statutes of the several states consanguinity is fundamental in legislative fixing of descent and distribution of property. True, the subject is one of legislative will; but legislation repudiating or eliminating blood relationship from the descent of property would be so abhorrent to every incident of our home and family life as to meet with general disapproval. The courts should depart from this elemental guideship only when forced to do so by an inexorable statutory demand. Our statute is inexorable in its demand that the estate of one dying shall go to his kindred; those of his blood, flesh of his flesh, bone of the bone. To such kindred, the father, the mother, the grandfather, the grandmother, the children, the grandchildren, the collaterals of blood relation, and only to those who are kin, those of the same blood, does the chapter anywhere extend; saving and excepting where it has been directly modified by statute, as in the descending right of adopted children to them as children of the blood, and by virtue, also, of the marriage relation. The statute on adoption must be read into the statute of distribution and descent, but it is to be read in only to effectuate the precise terms of the statute on adoption; that is, to preserve the right of inheritance in the adopted child afforded him by the statute. The act of adoption gives to and does not take away from the child. It makes him the heir of another, but it does not make that other his heir. It makes him a child to inherit, but it does not make the one adopting him a parent to inherit from him. As was well said in Schaffer v. Eneu, 54 Pa. 304:

"The right to inherit from the adopting parent is made complete, but the identity of the child is not changed. One adopted has the rights of a child without being a child."

We could not, without judicial legislation, hold that the word "parent" in section 1845 in an inheritable sense means one who adopts another. It takes no theorizing or straining of construction to say who is a parent. The chapter of descent and distribution nowhere makes in it any mention of the descent of property from a child by adoption. The statute does not say that the property of an adopted child shall go back to the one who adopted him—the one from whom the property was derived. It says that the property of a natural child shall go back to his parent, a child of the blood, a parent of the blood; and it says no more. In order to have the statute read more, we must give the adoption statute and ascending intent, and say that under it the one adopting becomes ipso facto a "parent" of the child adopted. If that is true, this boy, had his adopting mother survived him, would have had two mothers, a conclusion which is manifestly untenable. If the Legislature meant to take away from the natural parents of the child adopted the right to inherit from their natural child, just as all other parents inherit from their natural children, the Legislature would doubtless have said so. When the Legislature undertakes to legislate upon any given subject, it is presumed to exercise the legislative will upon that subject in entirety. It has defined the rights between the child adopted and the adopting parent. and it has seen fit to make these rights descending only. The Supreme Court of Wisconsin, in Hole v. Robbins, 53 Wis. 514, 10 N. W. 617, construed the Wisconsin statute. In that case the statute went to the extent of declaring that the child was adopted "to all intents and purposes as if such child had been born in lawful wedlock of such parent or parents by adoption." Rev. St. 1858, c. 49, § 6. The adopting father ᴀ aᴖmed as a result of the relationship created by statute the right of inheritance from the adopted child. Said the court:

"The statute having expressly declared that the adopted child shall inherit from the adopted (adoptive) parent; and

having omitted to declare that the adopted parent shall inherit from the child, we think it must be held, according to the rules of construction, that the general law of inheritance was not intended to be changed in favor of the adopted (adoptive) parent, and that the estate of the adopted child, upon his death without a will, must descend to his kindred of blood as prescribed by section 1, ch. 92, R. S. 1858 as amended. That the word 'parents' in subdivision 2 of section 1, ch. 92, means natural parents, and not parents by adoption, cannot be doubted. All the other provisions of the section refer to kindred of blood of the deceased; and the word 'parents', both by derivation and common understanding, means the natural parents."

See, also, dissenting opinion in Lanferman v. Vanzile, 150 Ky. 751. 150 S. W. 1008, Ann. Cas. 1914D, 563. for definition of parents as follows:

"Reverting again to the word parent. Webster defines it as 'One who begets, or brings forth offspring; a father or mother.' It is of kin to the Latin parere, to bring forth, and to the Greek porein, to give or to beget. In other words, a parent is one who begets an offspring, and not one who, under the statute, adopts another person as his heir."

Another consideration is that, as stated in Harrison v. Harrison, supra, since 1852, under the statute of distribution, parents have been heirs of their children, and up to 1887 were the sole heirs of such children. As we said in that case:

"The law of 1852 covered the whole law of descent and distribution and remained in force until February 24, 1887, when the Legislature passed an act, entitled 'An act regulating descents and the apportionment of estates.' "

Therefore it cannot be said that the Legislature contemplated adoptive parents when they used the word "parents," because it was not until chapter 31 of the Laws of 1869-70 was enacted that any provision was made for the adoption of children.

The case of Hockaday v. Lynn, 200 Mo. 456, 98 S. W. 585, 8 L. R. A. (N. S.) 117, 118 Am. St. Rep. 672, 9 Ann. Cas. 775, is a leading case frequently referred to. There the court held that under a statute permitting a person to adopt a child as an heir an adopted child is not by right of representation entitled, after the death of his adoptive parent, to take the

intestate estate of the latter's brother as an heir. The court said:

"In fact, it may be laid down as a general conclusion that while the statute of adoption must be read into the statute of dower and that of descent and distribution, it is with this singularity, always to be observed, viz., that the adopted child is so let in only for the purpose of preserving in full its right of inheritance from its adoptive parent; and the door to inheritance is shut and its bolt shot at that precise point. If we look to our statute on adoption it will be found to be writ large there that an adopted child bears only the badge and relation of child to the adopting parent. In Revised Statute 1899, § 5246, it is provided that 'if any person in this state shall desire to adopt any child * * * as his or her heir or devisee, it shall be lawful for such person to do the same deed,' etc. The very next section (5247) provides that: 'A married woman, by joining in the deed of adoption with her husband, shall, with her husband, be capable of adopting any child or children.' It will thus be seen that, in the legislative mind, the effect of the adoption of a child is restricted to the adopting parent, and, hence, the adopted child does not become the child of a married woman by the adoption of her husband, but to become such child the adoption must be joined in by the wife."

It should be observed that by section 15 of our statute above quoted either the husband or wife, with the consent of other other, may adopt a child, thereby securing an heir for the one adopting, but it may be doubted that the child becomes the heir of both, unless both join in the adoption application, as was the effect of the joint agreement in Barney v. Hutchinson, supra. With reference to the law of descent and distribution, the Missouri court said:

"Apposite to this view it may be said that laws of descent and distribution, barring the one incident of a husband and wife's rights by marriage, are universally built on, and around, the idea of blood kinship. Inheritance flows naturally with the blood. Hole v. Robbins, 53 Wis. loc. cit. 517, 10 N. W. 617. True it is that laws of descent and distribution are subject to arbitrary change by the lawmaking power, but to arbitrarily change them so as to repudiate or eliminate the basic principle of blood kinship would breed trouble and dismay. So deep does that notion run in the human breast and through our case-made law that, if it be ignored in a will, the fact of such unhappy and unnatural disposition of property may be put in as evidence tending to show testamentary incapacity, or undue influence, and, when united with other facts, may be sufficient to set the will aside."

The language of sections 22 and 25, heretofore quoted, does not add anything to section 1492, C. L. 1897, with respect to fixing the status of the adopting and adopted parents. Said section 1492 evidently provided that the child should inherit from its adoptive parent, but, apparently, there the Legislature shut the door. The case of Hole v. Robbins, supra, is a much-cited case which decided a similar point as set forth in the quotation from that case given above. Section 5 of the act under consideration by the Wisconsin court was substantially the same as our section 22, while section 7 was almost exactly like our section 25, while section 6 had the same effect as section 1492, C. L. 1897, as construed by this court in Barney v. Hutchinson, supra. Said section 6 of the Wisconsin act was as follows:

"Sec. 6. A child so adopted as aforesaid shall be deemed, for the purpose of inheritance and succession by such child, custody of the person and right of obedience by such parent or parents by adoption, and all other legal consequer ces and incidents of the natural relation of parents and children, the same to all intents and purposes as if such child had been born in lawful wedlock of such parent or parents by adoption, saving only that such child shall not be deemed capable of taking property expressly limited to the heirs of the body or bodies of such petitioner or petitioners."

Because of the similarity of the statutes there and here, we shall quote at some length from the opinion in that case.

"It is claimed by the learned counsel for the appellants that the general words in section 5 which declare the status of the child adopted, viz., 'he shall be deemed and taken, to all legal intents and purposes, the child of the persons adopting him,' and especially the words in section 6 which declare that 'he shall be deemed, for the purposes of inheritance and succession by such child, custody of the person and right of obedience by such parent or parents by adoption, and all other legal consequences and incidents of the natural relation of parents and children, the same to all intents and purposes as if such child had been born in lawful wedlock of such parents by adoption, saving,' etc., by fair construction must be held to confer upon the persons adopting the child all the rights they would have had if the child so adopted had been born to them in lawful wedlock, and to deprive the natural father and kindred of all rights of inheritance or succession from such adopted child.

"Both by the common law and by the statutes of this state inheritance is confined to the blood of the deceased, the only exception made being in favor of the wife of the deceased. See chapter 92, R. S. 1858, as amended by chapter 61, Laws of 1868, and chapter 121, Laws of 1870 (2 Tay. Stats. 1169). Under subdivision 3 of section 1 of the general law above cited, the respondents were clearly entitled to the real estate of which the deceased, John A. Hole, died seized; and unless the law above quoted in regard to the adoption of children takes away this right, the judgment of the county and circuit courts was clearly right.

"After carefully considering all the provisions of the law regulating the adoption of children, we are of the opinion that there was no intention on the part of the Legislature to change the general law upon the subject of inheritance from an adopted child. It is very clear that the Legislature did not intend to give that effect to the words used in section 5. If the words used in that section were intended to fix the rights of the child adopted, and declare him to be the child of the adopted parents, with all the mutual rights of a child by blood, as inheritance by the child from the adopted parents, and by the parents from the child, there would have been no necessity for making the declaration as to the rights of the child in section 6. The Legislature deemed it necessary, in order to give the adopted child the right of inheritance and succession from the adopted parent, to expressly declare that he should have such rights, and so take his case out of the general law of descent, which gives the property to the kindred of the deceased by blood. The other general words 'and all other legal consequences and incidents of the natural relation of parents and children, the same to all intents and purposes as if such child had been born in lawful wedlock.' are clearly added with reference to the rights of the child, and not of the adopted parents. The only words which are at all declaratory of the rights of the adopted parent, are the words 'custody of the person and right of obedience by such parent or parents by adoption.' It seems to us quite clear that the Legislature, which deemed it necessary to declare by express words the right of inheritance by the adopted child from the adopted parents, and not leave such right to be inferred from general words, would have been much more likely to have declared the other proposition also by express words, if it were intended that the adopted parents and their kindred should inherit from the child. The reason for such declaration would seem to be more necessary than the declaration of the right of inheritance in favor of the child.

"The adopting parent is of full age, and enters into the engagement with full knowledge of its effect. The child, in most instances, is entirely unable to comprehend the relationship made by the process of adoption, and can give no legal consent to any change of his rights by such adoption. If the adoption is to work a radical change as

to the right of inheritance to his estate, it would seem to require an explicit declaration to that effect. The seventh section, above quoted, which undertakes to define what rights of the natural parents of the child adopted shall be taken away by such adoption, fails entirely in taking away the right of inheritance from such child in case he should die without issue or descendants and leaving no widow. It merely declares that the order of adoption shall deprive the natural parents 'of all legal rights whatsoever as to the child, and the child shall be freed from all legal obligations of maintenance and obedience as respects his natural parents.' These words refer solely to the right of the natural parent to the personal control, education, and maintenance of the child. The rights of which the natural parents are deprived respect the child itself, and not his property or their right to inherit from him.

"The statute having expressly declared that the adopted child shall inherit from the adopted parent, and having omitted to declare that the adopted parent shall inherit from the child, we think it must be held, according to the rules of construction, that the general law of inheritance was not intended to be changed in favor of the adopted parent, and that the estate of the adopted child, upon his death without a will, must descend to his kindred of blood as prescribed by section 1, c. 92, R. S. 1858, as amended. That the word 'parents', in subdivision 2 of section 1, c. 92, means natural parents, and not parents by adoption, cannot be doubted. All the other provisions of the section refer to kindred of the blood of the deceased; and the word 'parents,' both by derivation and common understanding, means the natural parents."

What we have said, and what has been quoted, as regarding the right of the adopted parent to inherit from the adopted child is by way of argument and illustration; that not being the question in this case. It is argued in the brief of appellee that—

"If the adopted child can inherit by virtue of our statute from the adopting parent, and this court as before cited has already held that this can be done, by virtue of the law of the state upon the subject, then certainly that statute is susceptible of, and must be given the same construction with reference to the adopting parent; otherwise it would be a one-sided statute, a law that creates reciprocal burdens without reciprocal rights."

The appellee cites the cases of Havsgord's Estate, 34 S. D. 131, 147 N. W. 378, and In re Darling's Estate, 173 Cal. 221, 159 P. 606, in support of his argument. These cases do hold that the legal rights of the adopted child and the adoptive parent are reciprocal, including the right to inherit from each other. However, it is to

be noted that the controlling section of the statutes in California and South Dakota is word for word the same, and both of them are different from ours. The statutes in these two states declare:

"A child, when adopted may take the family name of the person adopting. After adoption the two shall sustain toward each other the legal relation of parent and child, and have all the rights and be subject to the duties of that relation." Civ. Code, Cal. § 228; Civ. Code, S. D. § 136.

The first sentence of our section 24 heretofore quoted is identical with the South Dakota and California statutes, with the exception of the substitution of the word "shall" for "may," to-wit:

"A child, when adopted, shall take the family name of the person adopting."

Then our section 24 diverges, and the language of the South Dakota and California statutes, which establishes the legal relation of the parent and child, etc., is omitted. From the marked similarity of the first sentence in all three statutes we are strongly of the opinion that the draftsman of the act of 1893 had before him the California or South Dakota, or a similar statute, and adopted the language of the first sentence thereof, and intentionally omitted the remainder of the section. And here again, according to the rules of construction heretofore referred to, we think it must be held that the Legislature consciously refrained from establishing the full legal relation between the adopted child and the adoptive parent to the extent that the same was done in South Dakota and California.

But the precise question here is not the question of the inheritable capacity of the adoptive parent to take from the adopted child, because in this case such adopted child outlived its adoptive mother. The precise question is, Do the kindred of the adoptive parent have the right of inheritance from the adopted child?

In the absence of statute, the holding is that, even though the adoptive parent by virtue of statute may inherit from the adopted child by reason of the reciprocal relation of parent and child, yet, in the absence of

statute extending the relation further, the so-called reciprocal relation stops there.

We quote first from In re Bradley's Estate, 185 Wis. 393, 201 N. W. 973, 38 A. L. R. 1, decided January 13, 1925, which cites approvingly Hole v. Robbins, supra, and is a well-considered opinion, holding that a statute making adopted child for the purposes of inheritance and succession the same as legitimate child of adopted parents does not make adopted child heir of kindred of adoptive parents. The court said:

"There are many reasons why an adoption statute should be strictly construed to enforce the duties and obligations voluntarily assumed by adoptive parents, and to protect the adopted child in those rights and privileges which the law intends to secure to him as the result of the adoption. These reasons, however, do not apply when the rights of those who were not parties to the adoption proceedings are involved. The status resulting from adoption proceedings is not a natural one. It is a civil or contractual status. One may have the right to assume the status of a father to a stranger of the blood, but he has no moral right to impose upon his brother the status of an uncle to his adopted son. As was said in Warren v. Prescott, 84 Me. 483, 24 A. 948, 17 L. R. A. 439, 30 Am. St. Rep. 370: 'By adoption, the adopters can make for themselves an heir, but they cannot thus make one for their kindred.'

"In Merritt v. Morton, 143 Ky. 133, 136 S. W. 133, 33 L. R. A. (N. S.) 139, it was said: "The act of the foster parents in adopting the child is a contract into which they entered with those having the lawful custody of the child, an agreement personal to themselves, and while they have a perfect right to bind or obligate themselves to make the child their heir, they are powerless to extend this right on his part to inherit from others. All inheritance laws are based or built upon natural ties of blood relationship, whereas an adopted child's right to inherit rests upon a contract, and hence only those parties to the contract are bound by it.'

"And in construing the adoption statute of Michigan the court of that state said: 'We see nothing in it to lead to the belief that it was the legislative intention to permit one to adopt heirs for third persons.' Van Derlyn v. Mack, 137 Mich. 146, 100 N. W. 278, 66 L. R. A. 437, 109 Am. St. Rep. 669, 4 Ann. Cas. 879.

"Of course what was said by these courts was said with reference to the statutory provisions on the subject of adoption of their respective states. These authorities do not go to the extent of denying to the Legislature the power of prescribing a course of descent which will take property

of deceased persons out of the current of their blood. That is a question that was not before any of the courts quoted, a question which is not here, and upon which we very carefully refrain from expressing any opinion, in view of our decision in Nunnemacher v. State, 129 Wis. 190, 108 N. W. 627, 9 L. R. A. (N. S.) 121, 9 Ann. Cas. 711. We are now emphasizing the fact that to accomplish such purpose the Legislature should use explicit and unmistakable language. The consequences which would result from such a law are very well illustrated by this very situation. The respondent herein is related by ties of blood to the deceased. The appellant is not related to him in any manner, neither by ties of blood nor by contractual relations. If his contention is to be maintained, he, a stranger to the blood of the deceased, bearing to him not even the duty of kindred regard, will divide with the respondent his estate. Furthermore, but for the existence of the respondent, he would succeed to deceased's entire estate, thus diverting it entirely from his blood relatives, and cutting off deceased's cousins, and all his other blood relatives, from any participation therein. This result is entirely repugnant to the notions of natural justice which are embraced as by common consent by the Anglo Saxon race.

"Text-writers generally lay down the rule that under statutes of adoption which declare the adopted child to have all the rights, including that of inheritance of a child born in lawful wedlock, the adopted child is not constituted an heir of the collateral kindred of the adoptive parents." (See opinion for many citations.)

The same principles were applied in Baker v. Clowser, 158 Iowa, 156, 138 N. W. 837, 43 L. R. A. (N. S.) 1056, where the facts were quite similar to those in the case at bar, and the court reached the following conclusion:

"If Code 1873, § 2307, authorizing any person competent to make a will to adopt the child of another conferring on it all the rights, privileges, and responsibilities pertaining to a child born to such person in lawful wedlock, and section 2310, providing that the rights, duties, and relations between the parent and child by adoption should be the same in all respects, including the right of inheritance, as existed by law between parent and child by lawful birth, authorized an adopting parent to inherit from the adopted child, it did not authorize the heirs of such adopting parent in the case of his death to inherit from the adopted child; and hence, where a child was adopted and died while that Code was in effect, her natural parents inherited her real estate, under section 2455, providing that the surviving parents of one dying without issue and unmarried become vested in equal shares with the real property of such child, and they were not prevented from inheritance

by the fact that the adopted child inherited such real estate from its adopting parent."

See, also, MacMaster v. Fobes (1917) 226 Mass. 396, 115 N. E. 487.

To the same effect is Murphy v. Portrum, 95 Tenn. 605, 32 'S. W. 633, 30 L. R. A. 263. The following syllabus shows sufficiently the decision:

"A decree for the adoption of an illegitimate child with capacity to inherit, without legitimating the child, may be rendered under a petition which asks for both legitimation and adoption.

"The next of kin of the father of an illegitimate child that has been adopted with capacity to inherit, but not legitimated, have no inheritable blood as to such child.

"Property descended from the father to an illegitimate child who has been adopted but not legitimated will, like other property of the child, descend on his death intestate to his mother in preference to the father's next of kin, under the general provisions of Mill. & V. Code, § 3273, as to inheritance from an illegitimate child by the mother."

See, also, Appeal of Simmons, 121 Me. 97, 115 A. 765, where the court decided:

"The heirs at law of an adopted child dying intestate, unmarried, and without issue, must be sought in the family into which he was born, and not in the family of which he became a part by adoption, under a special act (Priv. & Sp. L. 1864, c. 299, § 1), providing that he should 'sustain the same relation to them (the adopted parents) and to their estate at all times as if * * * born in lawful wedlock'; neither such statute nor Pub. Laws 1855, c. 189, then in effect, bestowing rights of inheritance upon the adopting parents."

In Edwards v. Yearby (1915) 168 N. C. 663, 85 S. E. 19, L. R. A. 1915E, 462, it was decided:

"Under Revisal 1905, § 177, authorizing the adoption of children and giving the child an inheritable right, the natural father of an adopted child will inherit over the adopted father; the statute of descent giving the natural father a right to inherit from the child."

And the court said:

"Our general statute on descents of real property, founded on and, to a great extent, embodying the principles of the common law, would give this property to the natural father (Revisal, c. 30, rule (6); and, this present law of adoption having in express terms conferred the right of

inheritance only on the child, it should, by correct inter-
pretation be confined to that, and create no other inter-
ference with the general law than the statute itself de-
clares. Black on Interpretation of Laws, p. 146; Lewis'
Sutherland (2d Ed.) § 491.

"Speaking to the position and the general policy upon°
which it is properly made to rest, Rodgers on Domestic
Relations, § 463, says: 'As statutes conferring the rights,
duties, and liabilities of natural children upon those adopted
thereunder are in derogation of the common law, they
must not be construed to enlarge or confer any rights not
clearly given. Upon the principle, therefore, it is clear
that an adopting parent could not inherit from an adopted
child unless this be clearly authorized by the statute.
Indeed, out of an abundance of caution, the statutes on
the subject in some states expressly provide that the
adopting parent shall not inherit from the child adopted.
This is done to prevent designing persons from getting
the estate of the child through the process of adoption.
It would be to the interest, from a financial standpoint,
of a quasi parent who has adopted a child being an heir to
a fortune, large or small, and who has no descendants who
could take the inheritance in preference to a parent, to
bring about the death of the child for the purpose of
succeeding to the inheritance. Under such a condition of
things, the quasi parent might neglect the child in sickness,
or otherwise be the means, directly or indirectly, of bring-
ing about the death of the adopted child. For these and
like reasons, the doctrine of ascent of property from an
adopted child to its new parent is not, and should not be,
favored in law.'"

See, also, Heidecamp v. Jersey City, etc., Ry. Co.,
69 N. J. Law, 284, 55 A. 239, 101 Am. St. Rep. 707,
where the court decided:

"Next of kin of an adopted child is the next of kin by
blood and not the adopting parent, under a statute con-
cerning adoption which wholly fails to bestow upon the
adopting parent any right to inherit the estate of the
adopted child."

It is true that a different conclusion was reached
in Humphries v. Davis, 100 Ind. 422, 50 Am. Rep. 788,
which was relied upon by the Kentucky court in
Lanferman v. Vanzile, 150 Ky. 751, 150 S. W. 1008,
Ann. Cas. 1914D, 563, cited by appellee. But, as
pointed out by Justice Winn in a strong dissenting
opinion in the Lanferman case, there is an interesting
bit of history connected with the case of Humphries
v. Davis. He said:

"Lastly, we come to the case of Humphries v. Davis, 100 Ind. 274, 50 Am. Rep. 788, cited to sustain the majority opinion. Some little history of the case and of the growing up of the Indiana doctrine is interesting. In Barnhizel v. Ferrell, 47 Ind. 335, it was held that on the death of the adopting parent the adopted child inherited from him; and that on the death of the child his natural parent would inherit such property to the exclusion of the children of the adopting parent—precisely the position of the appellee here. Later there came on the case of Krug v. Davis. 87 Ind. 590. This litigation involved the same child that later came on in the Humphries v. David case. In the eighty-seventh Indiana case the doctrine of Barnhizel v. Ferrell was recognized and reaffirmed without argument. At once the Legislature of Indiana enacted an amendment to its statute in the year 1883 * * * in the following words: 'That should such adopted child die intestate, without leaving wife or husband, issue or their descendants, surviving him or her, seized of any real estate or owning any personal property which may have come to such child by gift, devise or descent from such adopting father or mother, such property so coming to such adopted child shall, on its death, descend to the heirs of said adopting father or mother the same as if such child had never been adopted.'

"This amendment was in force in the state of Indiana when the opinion in Humphries v. Davis was written. In other words, the Legislature of Indiana, before the case of Humphries v. Davis was decided, had adopted that precise statute, the spirit of which was carried out in that case."

Further, it is to be noted in this case that in the stipulation of facts and the findings of fact it is recited "that the said Lillian M. Ward also adopted said minor in the state of Colorado in conformity with the laws of that state." We are not told when the adoption in Colorado occurred. It was evidently mentioned in the stipulation and findings as having some significance, but is not adverted to in the briefs of counsel. It is said in 1 C. J. on Adoption of Children, at section 138:

"Foreign adoption statutes have no extraterritorial effect. But it is generally held that the status created by an adoption in one state will be recognized by the courts of another state, to such extent at least as is not inconsistent with the laws and policy of the latter.

"This general rule is subject, however, to the qualification that the courts of a particular state will not permit a statute of a foreign state to extend any further than the local law upon the same subject, nor to confer any greater rights, and there is also authority to the effect that where the local statute of adoption confers greater rights than

the foreign statute under which the child was adopted, the rights of the child will not be enlarged so as to be commensurate with those conferred by the local statute."

Of course, the property involved in this suit being real estate situated in New Mexico, the laws of New Mexico are controlling. But, in the absence of any previous holding on the precise question in this state, it would seem appropriate to consider the decisions of the Colorado Supreme Court as strongly persuasive with us, when such decisions are rendered upon a state of facts similar to those in the case at bar, particularly as such decision seems to be in accord with the weight of authority and the better reasoned cases. That court declared in Russell v. Jordan, 58 Colo. 445, 147 Pac. 693, Ann. Cas. 1916C, 760:

"Rev. St. 1908, § 526, provides that after a decree of adoption the person adopted shall be entitled to inherit as if he had been the petitioner's child born in holy wedlock. Section 529 declares that the adopted child shall be to all intents and purposes the child and legal heir of the person adopting him, while section 7042 also declares that adopted children shall be legalized and entitled to inherit as legitimate children. Held, that an adopted child and his adopters do not, except in so far as provided by statute, assume the relation of parent and child, and where, after the death of the adopters, the adopted child died leaving no issue, his relatives by blood take in preference to the children of the adopting parents."

We therefore conclude that the appellants should prevail.

Appellee contends that this case should not be reviewed by this court because appellants failed to except to the findings of fact and conclusions of law in the trial court, and cites Garcia v. Silva, 26 N. M. 421, 193 P. 498, in support of his contention. In that case we said that, while section 37, chapter 43, Laws 1917, dispenses with formal exceptions, it does not relieve the party of the necessity of directing the attention of the trial court, in some appropriate manner, to the claimed errors which it is making, and seeking the correction there in the first instance. We further said in that case:

"If the findings asked by appellant had clearly presented the point now argued, or the conclusions of law requested

had done so, the fact that no formal exceptions or objections had been interposed to the findings made would probably have been of no consequence, but the finding which we have quoted would certainly not have the effect to advise the court as to the point here made."

[**2**] It will be noted that in the case at bar the court's findings of facts and conclusions of law were set out in the judgment, to which a general exception was taken in the following language:

"To all of the foregoing the said defendants object and except."

The judgment recites that the case was submitted upon an agreed statement of facts. There are limitations upon the general rule requiring exceptions to be made to the conclusions of law. Manifestly there would be no occasion to except to the findings of fact in this case, because they followed exactly the agreed statement of facts, and appellants are not now complaining of any error in the findings. Their complaint is that the conclusions of the court from the findings, which are summed up in the final conclusion that "from the foregoing it follows that the plaintiff is entitled to recover as against the defendants herein as prayed for in his complaint," were not warranted by the findings and the law of the case. The issues upon the agreed statement of facts were very narrow.

"In Missouri where the conclusions of fact reached are not merely in writing, but are also incorporated into and made a part of the judgment itself, no exceptions are necessary to authorize a review of the conclusions of law reached by the trial court upon the facts found. The findings stand as a special verdict or an agreed case; and unless the conclusions of law upon the facts found are correctly pronounced the judgment must be reversed." See note 10, page 938, 3 C. J., and cases cited.

In Springfield Safe Deposit & Trust Co. v. City of Attica, 85 F. 387, 29 C. C. A. 214 (C. C. A. Eighth Circuit), the court decided:

"In order to question the correctness of the judgment rendered for defendant on an agreed statement of facts, it is not necessary that plaintiff should have made a formal motion for judgment on the statement, and then saved an exception to its denial. It is sufficient that he excepts to the judgment when rendered."

In the present situation we do not consider the doctrine of Garcia v. Silva, supra, as applicable.

From all of the foregoing it appears that the judgment of the lower court should be reversed, with directions to enter judgment for the defendants and cross-complainants, and it is so ordered.

PARKER, C. J., and WATSON, J., concur.