MINNIE M. BAKER v. BLANCHE A. CLOWSER, et al., and LEANDER W. CALHOON, et al., Appellants.

**Descent of property:** INHERITANCE FROM ADOPTED CHILD: STATUTES. 1 Under the general inheritance statutes the heirs of an adopting parent, upon the death of an adopted child unmarried and without issue, would not inherit the property of such child, but the same would pass to the natural parents of the child. And even though by a recent statute, attempting to fix the relation between adopting parent and adopted child, and in effect a modification to some extent of the inheritance law, it should be held that an adopting parent may inherit from the adopted child, it does not provide that the heirs of such parent are heirs of such child; and the exception to the general statute will be strictly construed and given effect only to the extent of its positive provisions.

**Co-tenants:** OUSTER. A co-tenant in possession, basing his claim to the 2 entire property solely upon improvements made upon the property, cannot invoke the statute of limitations against another co-tenant who did not know that the improvements were made under a hostile claim.
Sherwin and Evans, JJ., dissenting.

*Appeal from Page District Court.*—HON. A. B. THORNELL, Judge.

SATURDAY, DECEMBER 14, 1912.

IN an action for partition of certain real property between the widow and heirs of W. S. Baker, deceased, who was alleged

to have died seised of such property, the court was asked to decree that defendants Leander W. Calhoon and his wife, Polly Calhoon, had no interest in said property. By way of resistance to the relief thus asked, Leander W. Calhoon alleged that as the father of one Hattie Calhoon, deceased, who died seised of an interest in the property as coheir by adoption with W. S. Baker of David P. Baker, father of said W. S. Baker, he acquired title to one-half of such interest in the property of David P. Baker. The court held that Leander W. Calhoon acquired no interest in the property through his daughter, Hattie Calhoon, by reason of her adoption by David P. Baker, and from such decree, Leander W. Calhoon and his wife, Polly Calhoon, appeal.—*Reversed.*

*W. E. Gray* and *M. W. Frick,* for appellants.

*H. H. Scott* and *Parslow & Peters,* for appellee.

McCLAIN, C. J.—As between the plaintiff who is the widow of W. S. Baker, and the defendants (other than Leander W. Calhoon and his wife), who are alleged to have interests in the property in controversy as the heirs of W. S. Baker, no issue is presented on this record. The sole question for determination is whether Leander W. Calhoon has an interest therein, growing out of facts which will now be stated only so far as they are necessary to show what the issue decided by the trial court really was.

In 1885, David P. Baker died seised of the land in controversy. Prior to his death, he adopted as his child, by articles properly executed and filed, one Hattie Calhoon, issue of a marriage between his daughter Frances and the defendant Leander W. Calhoon, who in the meantime had been divorced from his wife, Frances, and had gone to another state to reside, and had there remarried. David P. Baker left surviving him five children and also his adopted child, Hattie Calhoon, and it is agreed that this adopted child be-

came an owner, by virtue of her adoptive relationship to the deceased, of an one-sixth interest in the property in controversy. By various conveyances, W. S. Baker, one of the children of David P. Baker, acquired the interests of his natural brothers and sisters and died seised of the land in controversy, subject only to the interest therein, if any, of Leander W. Calhoon, as father of Hattie Calhoon, who had died in the meantime. The mother of Hattie Calhoon also survived her and is still living (divorced, as already indicated, from the father) ; but her interest, if any, in the estate of her daughter, has passed to W. S. Baker by conveyance. The plaintiff, as widow, and the other defendants, as heirs through W. S. Baker, now claim the property under W. S. Baker, and seek to quiet the title thereto as against any claim of Leander W. Calhoon, contending : First, that said Calhoon acquired no interest by reason of his relationship to his daughter Hattie Calhoon; and, second, that if any interest ever passed to him by virtue of such relationship, it is now barred by the adverse possession of W. S. Baker and those claiming under him.

I. The first question presented for our determination under this record is whether on the death of Hattie Calhoon, seised of an one-sixth interest in the property in controversy by virtue of her adoption by David P. Baker, the father of W. S. Baker, under whom the other parties to the case claim title, the interest of said Hattie Calhoon passed to her natural father and mother in equal shares, or whether it passed to the other heirs of David P. Baker, her adopted father. Or, to state the question more concretely, it is this : On the death of an adopted child, dying without issue and unmarried, does the property inherited by such child from the adopting parent, who has in the meantime died, pass to the natural parents of such adopted child ?

1. DESCENT OF PROPERTY : inheritance from adopted child : statutes.

By the statutory provisions in this state regulating the descent of real property, which provisions contain no specific reference to cases of adoption, the surviving parents of one

who dies without issue and unmarried become vested in equal shares with all the real property of which their child dies seised; and Hattie Calhoon did, in fact, died seised of an one-sixth undivided interest in the property in controversy. See section 2455 of the Code of 1873, which was in force at the time of the death of Hattie Calhoon, and remains unchanged in effect in the present Code as section 3379. Therefore, unless the statutory provisions with reference to adoption prevent this result, Leander W. Calhoon is vested with an one-half undivided interest in the one-sixth undivided interest in the property in controversy of which Hattie Calhoon died seised.

The statutory provisions as to adoption which were in force when the adoption took place, and at the death of Hattie Calhoon, declared that any person competent to make a will might adopt the child of another, "conferring thereby upon such child all the rights, privileges, and responsibilities which would pertain to the child if born to the person adopting in lawful wedlock," and that upon the execution, acknowledgment, and filing for record of the instrument of adoption, "the rights, duties, and relations between the parent and child by adoption, shall, thereafter, in all respects, including the right of inheritance, be the same that exist by law between parent and child by lawful birth." See Code of 1873, sections 2307, 2310.

Under these statutory provisions, this court expressly refused to decide, in *Burger v. Frakes*, 67 Iowa, 460, 469, whether, on the death of an adopted child, the adopting parents surviving became the heirs of such child under the general statutes of inheritance, leaving it an open question whether the adopting parents or the natural parents inherit from the adopted child whom they survive. In *Chehak v. Battles*, 133 Iowa, 107, the court treated the question of the right of inheritance from the adopted child, as between the surviving foster parents and natural parents, as still open, with the suggestion that the authorities in other states are not harmonious, although in the meantime the Code of 1897

had been enacted, in section 3253 of which the provisions of
section 2310 of the Code of 1873 had been substantially incor-
porated, with the omission, however, of any express reference
to the right of inheritance. It is probable that the omission
of specific reference to rights of inheritance as between the
adopting parent and the adopted child indicated no intention
to modify the statutory provision as it previously stood, for
the Code Commissioners declare, in effect, that no change
in the law was intended. See Code Commissioners' Report,
1896, page 93.

But it is contended for appellants that there has been
recently a legislative interpretation of the previously existing
statutory law on this subject by the enactment, in 1902, of
a statute amending Code, section 3253, by adding the pro-
vision that, as between the adopting parent and adopted child,
the right of inheritance from each other shall be the same as
between natural parent and child (29 G. A., c. 132), and
another statute providing for an inheritance on the part of
the parents by adoption in accordance with the general statu-
tory provision regulating inheritance as between a parent and
a child dying without issue, with the added provision that,
if no heirs are found in the line of the adopting parents,
the property of the deceased shall go to the natural parents,
and, in case they have died, then in their line of descent (29
G. A., c. 136). There is certainly some force in this argu-
ment. If, under the existing statutory provisions, the prop-
erty of an adopted child would go to its adopting parents or,
in case they were already deceased, to their heirs to the exclu-
sion of the natural parents and their heirs, then there was no
occasion for the additional legislation to effect the purpose
accomplished, save in so far as it was desired to provide for
an inheritance by the natural parents or their heirs in the
event that no heirs in the line by adoption were found. How-
ever this may be, the fact that the Legislature saw fit, in 1902,
to expressly provide for the descent of the property of the
adopted child in the adopting line, does not constitute a legis-

lative declaration that the previous statute on the subject, which by its terms declared only the relations between the adopting parent and the adopted child, had that effect. It is plainly not competent for the Legislature to prescribe or indicate the construction of a previous statute under which rights have already vested.

In the absence, therefore, of any controlling construction as to the statute in question so far as it relates to the rights of the heirs of David P. Baker to inherit the interest in his estate which passed to Hattie Calhoon by virtue of her adoption, we look to the decisions in other states relating to the construction of similar statutes so far as they bear on the question, and we find the weight of authority to be to this effect: That the general statutes of inheritance are modified and set aside by statutes regulating the effect of adoption only so far as there is some specific provision in the statutes for adoption inconsistent with the application, in such cases, of the general inheritance statutes. *Reinders v. Koppelmann,* 68 Mo. 482 (30 Am. Rep. 802) ; *Upson v. Noble,* 35 Ohio St. 655; *Hole v. Robbins,* 53 Wis. 514 (10 N. W. 617) ; *Barnhizel v. Ferrell,* 47 Ind. 335; *Clarkson v. Hatton,* 143 Mo. 47 (44 S. W. 761, 39 L. R. A. 748, 65 Am. St. Rep. 635) ; *Keegan v. Geraghty,* 101 Ill. 26; *White v. Dotter,* 73 Ark. 130 (83 S. W. 1052).

To apply such a rule in the construction of our own statutes is not in violation of the requirement of our Code (section 3446) that its provisions "shall be liberally construed with a view to promote its objects." That language is used only to negative the rule of the common law that statutes in derogation thereof are to be strictly construed, and not with reference to the rule of construction to be applied in determining the extent of a statutory exception to a general statutory provision. Of course, the exception goes no further than the language used in providing for it will fairly warrant, and it must be presumed that, beyond the scope of the exception thus provided for, the general statutory provision shall apply.

From our own decisions some illustrations pertinent to the general subject-matter may be gathered. In the case of *Estate of Sunderland,* 60 Iowa, 732, it was held that under an adoption in another state by which, under the statutes of that state, the adopted child became entitled to inherit from the adopting parents, such child was not entitled to inherit through such adopting parents by right of representation. And in *Wagner v. Varner,* 50 Iowa, 532, we held that a child by adoption does not cease to be the child of the natural parent and entitled to inherit from such parent, the necessary implication being that the fact of adoption does not deprive the natural parent of the right to inherit from such child. In that case the court suggests that ''heirship is not a natural but a statutory right, arbitrary and general, and therefore exceptional cases of apparent hardship or inequality must occasionally occur.''

The only cases cited for appellee which seem to run counter to the weight of authority, as above indicated, are those of *Humphries v. Davis,* 100 Ind. 274 (50 Am. Rep. 788), and *Paul v. Davis,* 100 Ind. 422, in which it is held that the property inherited by an adopted child from the adopting parent does not, on the death of such child, pass to its natural parents, but goes to the persons who would have inherited it had the adopted child been the natural child of the adopting parents. That is to say, so far at least as property inherited from the adopted parent is concerned, the rules of inheritance are exactly the same as those which apply to a natural child. But our statute does not so provide, and to give it such construction would be pure judicial legislation. As indicated in the case of *Estate of Sunderland, supra,* the adopting child does not become in law the natural child of the adopting parent for all purposes unless the statute so provides, and the statute cannot be enlarged or extended in its scope beyond the legal effect of the language used. The theory of the two Indiana cases, last above cited, is that, for the purpose of effecting natural justice, the adopted child

may be treated as having a different status with reference to property inherited from the adopting parents than that which attaches to it with reference to property inherited from the natural parents; for the court apparently realizes the absurdity of holding that property inherited from the natural parent (such right of inheritance continuing to exist under the general statute notwithstanding the provisions of the statute as to adoption) shall go, on the death of the child, to the adopting parents or their heirs, rather than to the heirs in the natural line. The Indiana court attempts to sustain this anomalous distinction between property inherited from the adopted parent and that inherited from the natural parent by reference to rules of the civil law. Without discussing the peculiar relation arising by adoption under the civil law, it is sufficient to say that the relation arising by adoption is defined and determined by our own statutes, and it cannot be assumed that the Legislature intended that they should be construed in accordance with civil law rules. In *Reinders v. Koppelmann, supra,* the Supreme Court of Missouri discusses the civil law status arising by adoption, and points out that the statutes of that state, quite similar in their general provisions to those of this state, describe the rights arising by adoption as quite different from those which result from adoption under the civil law.

The attempt to introduce a peculiar rule of descent for property acquired by the adopted child from the adopting parents might seem, in particular cases, to be more in accordance with our general notions of natural justice. Such rule would, however, not only be without statutory authority, but in many cases would unnecessarily lead to the greatest confusion in its application. Suppose the adopted child should for many years outlive its adopting parent and also its natural parent, having by inheritance derived property from each, and having also accumulated property of its own. How could any court undertake to determine what portion of the estate finally left by such child should go to heirs in the line of the

adopting parent and what portion should go to heirs in the natural line? Suffice it to say that our statutes fix a general rule of inheritance, and that the statutory provisions as to adoption modify that general rule only in specific respects. Even if we should hold that the adopting parent is by statute the heir to the adopted child dying without issue or surviving spouse, still we would find no authority in the statute for holding that the heirs of the adopting parent are the heirs of the deceased adopted child. The statute in its broadest interpretation only attempts to fix the relation between the adopted child and the adopting parent; it does not attempt to indicate who are to be regarded as the heirs of the adopted child if the adopting parent is deceased. Heirship, under such circumstances, must be determined from the general statutory provisions as to inheritance.

II.   The contention for appellees that W. S. Baker, under whom they claim, held the property in controversy adversely to any right of appellants derived from their daughter Hattie

2. CO-TENANTS: ouster.

Calhoon, and that such adverse possession has continued in appellees so that the rights of appellants are barred by the statute of limitations, is not supported by the record. It is conceded that, when W. S. Baker first took possession of the land in controversy as one of the heirs of David P. Baker, he was a tenant in common with the other heirs, including Hattie Calhoon, as heir by adoption, and that she then was entitled to an one-sixth interest in the property. The only claim of an assertion of hostility to her title and that derived by her natural father from her on her death is based upon improvements made on the land by W. S. Baker during his lifetime. Now it appears from the testimony of plaintiff herself (widow of W. S. Baker) that her husband first went into possession of the land in controversy as tenant of his father, and that he continued to occupy the land as tenant after his father's death and until the death of his mother, and that the improvements relied upon were made before his mother's death. However this may be, there

is no evidence that Leander W. Calhoon, after the death of his daughter Hattie, had any knowledge of the making of any improvements under an assertion by W. S. Baker of hostile title to the share of Hattie and it is admitted that, so long as Hattie lived, her right to an interest in the property was not tolled by any hostile possession. So far as we can discover in the record, there was no public and notorious assertion of right to the entire property on the part of W. S. Baker to the exclusion of the interest of Hattie until, after having acquired by conveyances the interest of his other coheirs, he executed a mortgage on the premises in 1904, which · was then recorded. Conceding that the recording of this mortgage constituted notice to Leander W. Calhoon of the assertion of a hostile title so far as his interest in the property was concerned, it is sufficient to say that ten years from such assertion of a hostile title had not elapsed when this action was brought and Leander W. Calhoon interposed his claim of an interest by inheritance from his daughter. Counsel for appellees rely entirely upon the case of *Hanson v. Gallagher,* 154 Iowa, 192, in support of their contention; but reference to that case shows that it in no way supports the claim made for it. It was there expressly held that possession was not taken as cotenant, but under an absolute and exclusive claim of right.

The decision of the trial court is therefore *Reversed.*

SHERWIN and EVANS, JJ., dissent.