ROSA B. SHEPHERD ET AL. v. MAURICE P. MURPHY ET AL., Appellants. —61 S. W. (2d) 746.

Division One, June 12, 1933.

*Pross T. Cross, R. H. Musser* and *Gerald Cross* for appellants.

*Alva F. Lindsay* and *Mayer, Conkling & Sprague* for respondents.

1178

FERGUSON, C.—This is an action to quiet title to four town lots in the city of Plattsburg and eighty acres of farm land, all situate in Clinton County. The plaintiffs are the brothers and sisters and constitute all the heirs at law, respectively, of Edgar T. Webb and Virginia L. Webb, husband and wife, both deceased, who held title, by the entirety, to said real estate. The controversy as to title results from the adoption by the Webbs, in 1929, of a child born, out of wedlock, to defendant Esther Bledsoe Foster. The child, a boy, was born February 21, 1925, at St. Joseph, Missouri. The mother, Esther Bledsoe, was an unmarried girl of the age of sixteen years. To the attending physician, in making out a birth certificate, the mother stated her name as Matilda Walker and gave the child the name of Lawrence Walker. The attending physician called the Superintendent of the Humane Society of St. Joseph and the infant child was placed in the care of that society. Three days later the mother under the name of Matilda Walker signed and acknowledged a petition addressed to the Juvenile Division of the Circuit Court of Buchanan County praying the court "for an order authorizing her to surrender" the child "Lawrence Walker" to the "Humane Society of St. Joseph and Buchanan County" and requesting and authorizing "said society . . . to secure for said child a home in a good family . . . including legal adoption . . . by order of the court." The petition was heard and granted and an order made authorizing "the surrender of said infant child to the Humane Society . . . pending further orders of the court." The society placed the child in the Sheltering Arms Home at St. Joseph where he remained until his adoption, under a decree of the court, by Edgar T. Webb and Virginia L. Webb, husband and wife on January 26, 1929.

The Webbs resided on their farm, described in the petition, near Plattsburg. Being childless but desiring a child they arranged to adopt the infant Lawrence Walker. Our present code relating to the adoption of children (Article 1, Chapter 125, R. S. 1929) enacted in 1917 (Laws 1917, p. 193) was in force and effect at all the times herein mentioned. The petition for adoption filed by the Webbs in the Juvenile Division of the Circuit Court of Buchanan County conformed to the requirements of the statute (Sec. 14077, R. S. 1929) and all the formalities and conditions of the adoption code having been strictly complied with the court, upon the hearing, entered a decree of adoption finding the facts in accordance with Section 14078, Revised Statutes 1929, and changing the name of the child, as prayed in the petition, to Richard Edgar Webb. No ques-

tion is made as to the regularity or sufficiency of the proceedings and it is conceded that the adoption proceeding being in all respects valid the child thereby became, and thereafter was, the child, by adoption, of Edgar T. Webb and Virginia L. Webb and that all the rights, privileges and duties incident to such relationship attached. The child, Richard Edgar Webb, was immediately taken into the home of its foster parents where he thereafter resided. On July 29, 1929, approximately six months after the adoption was completed, an automobile in which the foster parents and the child were riding was struck by a train at a crossing of a highway over a railroad track and both adopting parents, Edgar T. Webb and Virginia L. Webb, were "instantly and simultaneously killed" and the child Richard Edgar injured from which injuries he died three hours later.

It is conceded that by virtue of the adoption statutes the child, having survived his foster parents, inherited from them in the same manner as would a natural child and was their sole and only heir at law and that therefore the real estate described in the petition, owned by the Webbs by the entirety, vested under our Statute of Descents in him. At the time of his death, on July 29, 1929, Richard Edgar Webb was of the approximate age of four years and five months. The natural mother, Esther Bledsoe, at a date, not shown but immaterial, subsequent to the birth of the child, intermarried with Lester C. Foster and on September 23, 1929, following the death of the Richard Edgar Webb, Esther Bledsoe Foster and her husband Lester C., executed and delivered a quitclaim deed conveying an undivided one-half interest in the real estate described in the petition to Maurice C. Murphy, an attorney of St. Joseph, for a consideration as stated therein of one dollar. Esther Bledsoe Foster and Maurice C. Murphy are defendants in this action.

Upon a trial in the circuit court the court found for plaintiffs and decreed that the title to the real estate involved "is vested in plaintiffs in fee simple" and that "defendants . . . have no right, title claim, interest or estate" therein from which decree and judgment defendants appeal. The position of plaintiffs, respondents, is that the title which, on the death of the adoptive parents, vested in the child, Richard Edgar Webb, vested on his death in plaintiffs in the same manner as title would have passed to them had he been a natural child of Edgar T. and Virginia L. Webb; while appellants contend that upon the death of the adopted child title passed to and vested in his natural mother, the defendant Esther Bledsoe Foster.

Succession to estates and the right of inheritance is wholly a matter of statutory regulation. It is an exclusive power of the Legislature to determine what persons or whether any persons shall inherit from one who dies intestate, to direct the course of succession

of the intestate's property and define what proportion of such estate shall descend to a particular person or class of persons. The Legislature has the power to both create and take away the right of inheritance and in the exercise thereof it can confer the right of inheritance upon adopted children or adopting parents or both, deprive the natural parents of any right of inheritance from such adopted child and fix the course of succession to property in such case.

While no mention is made in our Statute of Descents concerning the succession of property as between adopting parents and an adopted child the Statute of Descents "must be understood as merely laying down general rules of inheritance, and not as completely and accurately defining how the status is to be created which gives the capacity to inherit. It does not undertake to prescribe who shall be considered a child . . . or what is necessary to constitute the legal relation . . . of parent and child. Those requisites must be sought elsewhere." [See Fosburgh v. Rogers, 114 Mo. 122, 133, 21 S. W. 82, 84.] The decision of this title controversy turns then, upon the meaning and effect of the adoption code enacted in 1917, the status thereby created and what was intended by the provisions thereof in respect to the succession to property. The question is resolved to this: the proper construction of Section 14079, Revised Statutes 1929, of the adoption code, which declares, the effect of adoption as relates to the natural parents, the nature and status of the legal relationship created between the adopting parents and the adopted child and the right of inheritance. Said section (Italics ours) is as follows:

"When a child is adopted in accordance with the provisions of this article, *all legal relationship, and all rights and duties, between such child and its natural parents, shall cease and determine. Said child shall thereafter be deemed and held to be for every purpose, the child of its parent or parents by adoption, as fully as though born to them in lawful wedlock.* Said child shall be entitled to proper support, nurture and care from said parents by adoption, and shall be capable of inheriting from, and as the child of said parents as fully as though born to them in lawful wedlock. Said parent or parents by adoption shall be entitled to the service, wages, control, custody and company of said adopted child, and shall be capable of inheriting from, and as the parents of, said adopted child as fully as though the child had been born to them in lawful wedlock: *Provided, however,* that neither said adopted child nor said parents by adoption shall be capable of inheriting from or taking through each other property expressly limited to heirs of the body of such child or parent by adoption."

It is said: "Adoption statutes tend to conserve the best in-

terest of society and the State, and that recognizing these good results courts are more and more inclined to abandon the old rule of strict construction and to place a fair and reasonable construction" on such statutes. [1 R. C. L. 595.] With the primary purpose of such statutes in mind it is our duty to so construe the provisions of the foregoing section as to best promote the principles of equity and justice and accomplish the object for which the adoption code was enacted. Recourse to the decisions in this State relating to the method of adoption in effect prior to the enactment of the present comprehensive code does not afford precedents to guide us in the interpretation of the provisions of the 1917 act. Prior to that enactment our statute provided that any person desiring to adopt a child "as his or her heir" might do so by deed, i. e., by contract. On the death of an adopted child, intestate, without descendants, his or her estate went to his or her relatives by blood. [Reinders v. Koppelmann, 68 Mo. 482.] But the procedure required thereunder and the terms and provisions of our present adoption statutes are such as to constitute a new and complete code governing adoption of children and the rights and relations flowing therefrom.

Reverting to the section of the statute above set out it will be noted that it is therein expressly declared that from and after the adoption the adopted child "shall . . . be deemed and held to be *for every purpose* the child of its parent or parents by adoption, as fully as though born to them in lawful wedlock." (Italics ours.) This positive language discloses the legislative intent to establish the same legal relationship between the adopting parents and the adopted child that exists between parents and a natural child. Apparently the artificial relation is to be given the same effect as the actual relation. We find well-reasoned authority holding that under adoption statutes providing for adoption by judicial proceeding, and in that respect similar to our statute, though nothing is said in the statute concerning the inheritance or succession of property nevertheless if the effect of the statute is to create, without restrictions or limitations thereon, the legal relation of parent and child, that alone is sufficient to invoke all the incidents and consequences of that relation and upon the death of either the adopting parent or the adopted child, intestate, the property of the decedent passes under the Statute of Descents in the same manner it would pass were the child a natural child of the adopting parents. See, In re Estate of Jobson, 164 Cal. 312, 128 Pac. 938; the statute under examination in that case providing that "after adoption" the adopting parent and the adopted child "shall sustain towards each other the legal relation of parent and child and have all the rights and be subject to all the duties of that relation;" In re Enyart's Estate, 116 Neb. 450, 218 N. W. 89, where the statute declares that, "the person or persons adopting; and

the child adopted shall after adoption, sustain toward each other the usual relation . . . of parent and child, and shall have all the rights and be subject to all the duties of that relation;'' and, In re Havsgord's Estate, 34 S. D. 131, 147 N. W. 378, the statute there construed being: ''After adoption the two shall sustain towards each other the legal relation of parent and child and have all the rights and be subject to all the duties of that relation.''

Our statute establishes the relation of parent and child between the foster parents and the adopted child ''for every purpose . . . as fully as though'' the child had been born to such parents ''in lawful wedlock,'' i. e., as fully as if the child were the natural child of such parents. Further under our statute, supra, when the decree of adoption is entered by the court the legal relationship and all legal rights of the natural parents ''cease and determine.'' One legal right ordinarily enjoyed by the natural parents, which the Legislature has by this statute abrogated, is the right of inheritance from a child dying intestate and without descendants and apparently undertaking to make assurance doubly sure the statute then prescribes the course of succession to property as follows: ''Said child . . . shall be capable of inheriting from, and as a child of said parents as fully as though born to them in lawful wedlock'' and ''said parent or parents by adoption . . . shall be capable of inheriting from, and as the parents of, said adopted child as fully as though the child had been born to them in lawful wedlock.'' We think it the legislative intent to completely and fully establish and seal the relationship of parent and child between the adopting parents and the adopted child and to that end all legal rights of the natural parents ordinarily pertaining to that relationship were abolished and terminated by the event of adoption, which in the instant case operates to deprive the natural mother, Esther Bledsoe Foster, of any right to inherit from the deceased Richard Edgar Webb. If Richard Edgar Webb had died, intestate, possessed of property and without descendants, leaving surviving both his foster parents, the Webbs, and his natural mother, Esther Bledsoe Foster, it cannot be doubted that under the foregoing statute and our Statute of Descents the property would have passed to the foster parents to the exclusion of the natural parent. The natural parent would not have been entitled to inherit for the reason that by virtue of the statute such legal rights as she had possessed as a parent had ceased and terminated upon the adoption and all such rights, including that of succession to property, were vested in the adopting parents. We do not perceive how then the situation of the natural parent is changed by the fact that the foster parents died before the adopted child. To sustain appellant's contention we would have to hold that although her right to inherit from the child ceased and determined by the

adoption it was revived and restored by the death of the foster parents and that upon their death the legal relation of parent and child ceased as between the child and the deceased foster parents and was restored as between the child and his natural mother. Such holding would not be logical or in keeping with the plain terms of the statute. We think it the evident legislative purpose that the right of succession to property should follow the same channels it would take were the child a natural child of the adopting parents and that such is the course the Legislature undertook and intended to prescribe. This conclusion, is supported by the fact that the ordinary legal right of the natural parents to inherit from the child is cut off and terminated; that all legal relationship and rights of the parents by blood are abrogated; that the legal relationship of parent and child between the child and the adopting parents "for every purpose" is fully established and the child and the foster parents thus placed in all respects in the same position that would exist if the child had been born to such parents. With this the situation it would run counter to the sense and spirit of the act to hold that in the event the foster parents predecease the adopted child and the child thereafter dies intestate and without descendants his estate would escheat; hence the construction, supra, we have given the language of the statute relating to inheritance appeals to us as sound and as expressing the apparent legislative purpose. In this connection we look to the estate which the adopted child Richard Edgar Webb took upon the death of his foster parents. Under the adoption statute he inherited the estate "as the child of" his foster parents and by virtue of that relationship. He therefore took under the statute the same estate as would a natural child. The estate of a natural child who dies intestate, without descendants surviving, goes back to the kindred of his parents if the parents be dead. The child adopted under our statute inherits as though he were the child of his foster parent and therefore takes subject to the same limitations and conditions which apply to a natural child so that upon his death the estate of Richard Edgar Webb, which he inherited "as the child of" his foster parents, passed to the kindred by blood of the adopting parents and his kindred by adoption. Evidently it is intended by the statute to make the foster parents heirs of the adopted child in the same manner in which they would inherit from a natural child and it follows that the foster parents having died the right of succession is in their kindred, the plaintiffs herein, who are by reason of the statute the next of kin of the deceased child as if he had been born to his foster parents and were a child of their blood.

It seems to us that the construction we have placed upon the statute best harmonizes with its purposes and with public policy. The adoption statute "is humane and salutory." It was enacted "for

the purpose of providing homes and proper nurture, education and training for children who have lost their parents or children whose parents, because of misfortune or improvidence, are unable to properly rear and educate them, and should be so construed, if it can be done without doing violence to the terms of the statute, as to encourage the adoption of such children by persons who can properly rear and educate them.'' [In re Havsgord's Estate, supra.] If our adoption statute be construed, as appellants contend it should, so that property coming to the adopted child from its adopting parents, whether by gift, devise or inheritance, on the death of such child, intestate and without descendants, descends to strangers both in blood and in law of the adopting parents to the exclusion of their own kindred it would have a likely tendency to discourage persons willing, able and desirous of adopting children from taking unfortunate and homeless children and making them their own children by adoption with the rights and privileges incident to that relation. It may be well supposed in the present case that had the Webbs contemplated that through the adopted child their considerable and valuable property might, by operation of law, descend to the child's kindred of the blood to the exclusion of their own blood kindred they would not have adopted the child. A construction of the statute which works such result is not required by or to be found in language of the adoption act and would not, we think, be consistent with the legislative purpose.

The decree and judgment of the trial court is affirmed. *Sturgis* and *Hyde, CC.,* concur.

PER CURIAM:—The foregoing opinion by FERGUSON, C., is adopted as the opinion of the court. All of the judges concur.