Argued October 22, 1946; affirmed January 14, 1947

In re Frazier's Estate
STATE *v.* FALLAS et al.
(177 P. (2d) 254)

*Rex Kimmell,* Assistant Attorney General, of Salem (with George Neuner, Attorney General, of Salem, on brief), for respondent.

*Charles E. Wright,* of Portland (with Pendergrass, Spackman & Bullivant, of Portland, on brief), for appellants.

234

Before Belt, · Chief Justice, and Kelly, Bailey, Lusk, Brand and Hay, Justices.

LUSK, J.

The question arising on this appeal, broadly stated, is whether, upon the death of an adopted child, intestate, unmarried and without issue (his adoptive parents having predeceased him), the heirs and next of kin of the adoptive parents inherit his estate.

Jack Rollins Frazier, deceased, was born December 23, 1923, the son of an unmarried mother. He was legally adopted in this state in the year 1924 by Charles D. and Edna Frazier. He died intestate on October 16, 1943, while in the service of his country on the U. S. S. Meredith. He was never married and left no children or known blood relatives surviving him.

Both adoptive parents predeceased Jack Rollins Frazier. Edna Frazier died May 16, 1927, leaving as her sole heirs at law Charles D. Frazier, her husband; Jack Rollins Frazier, her adopted son; and N. B. Fallas, her son by a previous marriage. After her death Charles D. Frazier married Annine Frazier. He died July 17, 1940, leaving surviving him as his sole heirs at law his widow, Annine, and the said adopted son.

Upon the death of Charles D. Frazier, N. B. Fallas was appointed guardian of the estate of Jack Rollins Frazier, and, as such, received assets of the estate of Charles D. Frazier, deceased, to which Jack became entitled as heir of his adoptive father, together with the proceeds of two life insurance policies on the life of Charles D. Frazier, in which Jack Rollins Frazier was named beneficiary.

On the death of the adopted child N. B. Fallas was appointed administrator of his estate. The estate was appraised at about $7,000.00, including $2,752.81, the proceeds of the life insurance policies above mentioned; $1,030.40 arrears in pay due the deceased from the United States Navy; and personal property inherited from his adoptive father. During administration the State Land Board filed a petition with the probate court praying that the clear proceeds of the estate escheat to the State of Oregon on the ground that Jack Rollins Frazier had died without heirs. N. B. Fallas, in his individual capacity and as administrator, and Annine Frazier, the surviving widow of the adoptive father, answered such petition claiming that "as the sole heirs at law of the adoptive parents of the decedent" they "are the sole heirs at law of Jack Rollins Frazier, deceased."

The Circuit Court, after a hearing, entered a decree of escheat in accordance with the prayer of the State Land Board's petition, and N. B. Fallas, in his representative and individual capacity, and Annine Frazier have appealed.

The case involves the construction of the following provisions of the adoption statute of this state:

§ 63-406, O. C. L. A. "If, upon such petition so presented and consented to, the court is satisfied of the identity and relations of the persons, and that the petitioner is of sufficient ability to bring up the child, and furnish suitable nurture and education, having reference to the degree and condition of the parents, and that it is fit and proper that such adoption should take effect, a decree shall be made setting forth the facts, and ordering that from the date of the decree the child shall, to all

legal intents and purposes, be the child of the petitioner.''

§ 63-407, *id.* ''A child so adopted shall be deemed, for the purposes of inheritance of such child, and all other legal consequences and incidents of the natural relation of parents and children, the child of the parents by adoption, the same as if he had been born to them by lawful wedlock; except that he shall not be capable of taking property expressly limited to the heirs of the body or bodies of the parent by adoption, nor property from the lineal or collateral kindred of such parents by right of representation.''

§ 63-408, *id.* ''Excepting in the case of a parent who is the husband or wife of the person adopting the child, the parents of such child shall be deprived by such adoption of all legal rights as respects the child; and the child shall be freed from all obligations of maintenance and obedience as respects its parents.''

■ Before discussing what we consider the only substantial question in the case, which is whether the defendant Fallas has the same inheritance rights as though he were a brother by blood of Jack Rollins Frazier, deceased, we will dispose of the claim of Annine Frazier, the widow of Charles D. Frazier, the adoptive father. She did not adopt Jack and was not related to him by blood. He was her stepchild. Nevertheless, counsel for defendants say that she is Jack's heir because there is substantial authority for the view that the heirs at law of the adoptive parents inherit the property of an adopted child where the adoptive parents predecease him, and cite cases which, it is claimed, support that statement. But, whatever may be the rule in other jurisdictions, that cannot be the rule in Oregon. The only express provision about in-

heritance in our adoption statute is that in favor of the adopted child. He is made the heir of his parents by adoption. According to some decisions, it results by implication that the adoptive parents inherit from the adopted child. According to still others (which this court has refused to follow) the act of adoption establishes a legal relation, also, between the adopted child and the kindred of the adoptive parents, and, reading the adoption statute into the statute of descent and distribution, such kindred succeed to the estate of the adopted child when the adoptive parents have predeceased him. But, even on the theory of these cases, the widow of Charles D. Frazier would not have the inheritance right she asserts. Even though Jack Rollins Frazier had been the child of Charles D. Frazier, born in lawful wedlock, Annine Frazier would have had no such rights under our statute of descent and distribution, either as the heir of her deceased husband or otherwise. She was Jack's stepmother, but she was not his "mother" within the meaning of that statute. §§ 16-101, 16-102, O. C. L. A. See *Houston v. McKinney,* 54 Fla. 600, 45 So. 480. And, while she was an heir of her husband, there is no provision of the statute under which, as such, she can share in the estate of her deceased husband's son, whether by blood or adoption.

The court below was, therefore, clearly right in holding adversely to the claim of Annine Frazier, and we pass to a consideration of the alleged rights of N. B. Fallas, to whom we shall hereinafter refer as the defendant.

At the outset we take notice of the defendant's contention concerning the rule of construction to be applied. It is said, quoting 1 R. C. L., Adoption of

Children, 595, § 4, that it is the modern tendency of courts "to abandon the old rule of strict construction and to place a fair and reasonable construction upon proceedings under a statute relating to adoption with a view of sustaining the assumed relationship". *In re Buell's Estate,* 167 Or. 295, 117 P. (2d) 832, is cited by counsel for defendants in support of this view.

As recently as *Williams v. Capparelli,* ante p. 41, 175 P. (2d) 153, decided December 10, 1946, this court held that, the right of adoption being of civil origin and unknown to the common law, statutes of adoption must be strictly construed. See, to the same effect, *Long v. Dufur,* 58 Or. 162, 170, 113 P. 59; *Furgeson v. Jones,* 17 Or. 204, 217, 20 P. 842, 11 Am. St. Rep. 808, 3 L. R. A. 620. These cases all deal with the validity of adoption proceedings, and it may be that a different rule should be applied where the question is as to rights arising out of the adoption status. See, *In re Havsgord's Estate,* 34 S. D. 131, 141 N. W. 378; *In re Enyart's Estate,* 116 Neb. 450, 218 N. W. 89; *In re Captain's Estate,* 191 Okla. 463, 130 P. (2d) 1002 (1942). But, at most, in seeking to determine whether, as the defendants contend, the legal relationship created by the act of adoption extends beyond the immediate parties thereto and confers rights of inheritance on others than the adopted child and its adoptive parents, we think the court is not justified in indulging in a "loose construction" (*In re Captain's Estate,* supra), nor in going beyond the rule of "a fair and reasonable construction", to use the language of Ruling Case Law on which counsel rely. As stated by the Oklahoma court in the case last cited, "the rule of liberal construction * * * was never intended to extend the grant of the legislative body." Again, as

the court said in *Batcheller-Durkee v. Batcheller,* 39 R. I. 45, 97 Atl. 378, L. R. A. 1916E 545:

" * * * the object of the search is the meaning and intention of the legislature, and the court is not at liberty, merely because it has a choice between two constructions, to substitute for the will of the legislature its own ideas as to the justice, expediency, or policy of the law."

■ We are to determine, then, whether, within the true intent and meaning of the above quoted sections of the statute, an adopted child is in a legal sense a relative for purposes of inheritance, not only of its adoptive parents, but as well of its adoptive parents' kindred. And, in considering that question, the statute of adoption must be read into the statute of descent and distribution. *Hockaday v. Lynn,* 200 Mo. 456, 458, 98 S. W. 585, 8 L. R. A. (N. S.) 117, 118 Ann. St. Rep. 672, 9 Ann. Cas. 775.

■ It has recently been decided in this state that, where the situation is reversed and the adopted child asserts inheritance rights from the kin of his adopted father, no such relationship exists. *In re Hayes' Estate,* 161 Or. 1, 86 P. (2d) 424, 87 P. (2d) 766. In that case it was claimed that a child receiving a gift from the deceased father of his adoptive mother was a "lineal descendant" of the decedent, and, as such, not subject to a collateral inheritance tax. The court rejected the contention for the reason that the relationship created by the act of adoption was personal between the child and the adopting parent. The court said, after a review of the authorities (161 Or. 31):

"We cannot hold that Donald's share is rendered exempt by the above statute unless we believe that he is a lineal descendant of Dr. Hayes; in other

words, believe that when the latter's daughter adopted Donald she thereby made him the adopted grandson of her father, and conferred upon him the rights of a lineal descendant of the purported grandparent. Parents adopt a child voluntarily; the relationship, although governed by statute, is contractual. All who are strangers to the contract are free from its consequences unless the statute renders them subject to its terms. * * *

"It is our opinion that adoption under the sections of our code above mentioned created a relationship personal between the adoptive parents and the child."

Among the decisions relied on by the court in coming to this conclusion are *Batcheller-Durkee v. Batcheller,* supra, and *Keegan v. Geraghty,* 101 Ill. 26, in which statutes substantially identical with our own were construed. In each of these cases it was held that an adopted child does not inherit from the kindred of his adoptive parents. In the course of the opinions the Rhode Island and Illinois courts had occasion to consider the effect of the second exception in the statute which withholds from the adopted child the right to take "property from the lineal or collateral kindred of such parents by right of representation." It had been contended in behalf of the adopted child that this exception, "by excluding the right of an adopted child to take from the lineal or collateral kindred of the adopting parents, *by right of representation,* impliedly says that such child can *directly* inherit, in his own right, from the lineal or collateral kindred of the adopting parents, and that petitioner's claim of inheritance here is, to inherit directly in her own right." *Keegan v. Geraghty,* supra, 101 Ill. 38. The courts disagreed and said that the right of inheritance given to the adopted child "is to inherit from the adopted

parents only", and if, "being the adopted child, such child be not permitted to represent and stand in the place of the adoptive parent, and take by representation from the kindred of such parent, it would seem that much more he should not take directly from such kindred." *Batcheller-Durkee v. Batcheller,* supra, 39 R. I. 62. *Hayes' Estate* approves these views.

Counsel for the defendants have attempted to distinguish *Hayes' Estate* on the ground that "it did not involve inheritance from a member of the immediate family circle", and they quote from the opinion in that case the statement that "the adoption imposes upon the parent and child the same duties, obligations and rights *within the family circle* as if the child had been born to his adoptive parents in lawful wedlock" (161 Or. 32). (Italics are counsel's) The distinction suggested, apparently, is that between the relationship of brothers on the one hand, and grandparent and grandson on the other. Counsel further assert that under our statute adoption of a child creates the relation of brothers or sisters to other children of adoptive parents within the meaning of the statutes of descent and distribution. We think that the distinction is not one of substance and that the proposition asserted is untenable. *Hayes' Estate* cannot be reconciled with the claim of relationship between an adopted child and other children of adoptive parents. The rule which that case expressly approves is stated in 1 Am. Jur., Adoption of Children, § 63, and is quoted in *Hayes' Estate,* 161 Or. 28, as follows:

> "It is the general view that there is not conferred upon the child a right to inherit from the lineal or collateral kindred of the adoptive parent unless the language of the statutes is clearly to that effect."

The decision was an application of the foregoing rule. It so happened that *Hayes' Estate* was a tax case and that the relationship claimed to have been created by the act of adoption was that between an adopted child and the father of his adoptive parent. But the decision that there was no such relationship was necessarily based upon the court's conclusion that in no case does an adopted child inherit from *any* of the lineal or collateral kindred of his adoptive parent. Cases from other jurisdictions on which the court relied involved kindred of the deceased adoptive parent of varying degrees of consanguinity, and include *Batcheller-Durkee v. Batcheller,* supra, in which the court rejected the contention that an adopted child inherited from the child by blood of his adoptive parent.

■ Since it is the established law of this state, based upon what we consider sound statutory construction and the weight of authority as well, that an adopted child under our statute is not the heir of his adoptive parent's kindred, it would seem to follow no less that the statute does not confer on the kindred of an adoptive parent the right of inheritance from his adopted child. This is because, generally speaking, the right to inherit is reciprocal and equivalent. *In re Captain's Estate,* supra, 191 Okla. 468; *Keegan v. Geraghty,* supra, 101 Ill. 39; *Hockaday v. Lynn,* supra, 200 Mo. 470; *In re Jobson's Estate,* 164 Cal. 312, 128 P. 938, 43 L. R. A. (N. S.) 1062. It is true, of course, as counsel for the defendants say, that this is not necessarily the case. The statute may provide otherwise, as, for example, in Colorado, where it is held that a statute expressly providing for inheritance in certain circumstances by the family of which the child is a member by adoption, does not grant a reciprocal right in the

adopted child. See *In re Warr's Estate,* 111 Colo. 85, 137 P. (2d) 408, and *Coffman v. Howell,* 111 Colo. 359, 141 P. (2d) 1017.

But, since defendant cannot, in view of the decision in *Hayes' Estate,* base his asserted right of inheritance from the deceased adopted child on any right which the latter would have had to inherit from the defendant, he must point to language in the statute which confers that right.

■ This, we think, he has not succeeded in doing. Counsel stress what they refer to as ''the very broad provision'' of § 63-407, O. C. L. A., that an adopted child ''shall be deemed for the purposes of inheritance of the child, and *all other legal consequences and incidents of the natural relation of parents and children, the child of the parents by adoption as if he had been born to them by lawful wedlock.*'' But there is nothing in this provision which speaks of inheritance rights of kindred of the adoptive parents. In Iowa there was a similar statute. It provided ''that the rights, duties, and relations between the parent and child by adoption, shall, thereafter, in all respects, including the right of inheritance, be the same that exist by law between parent and child by lawful birth.'' In *Baker v. Clowser,* 158 Iowa 156, 138 N. W. 837, 43 L. R. A. (N. S.) 1056, the question was whether, under the statute, heirs of an adoptive parent, upon the death of an adopted child, unmarried and without issue, would inherit the property of such child, and the court held that the statute, as it then was, conferred no such right. It was said:

''The statute in its broadest interpretation only attempts to fix the relation between the adopted child and the adopting parent; it does not attempt to indicate who are to be regarded as the heirs of

the adopted child if the adopting parent is deceased.'' (158 Iowa 164)

Similarly, § 63-407, O. C. L. A., while it may be deemed a broad provision in so far as it delineates the rights of the adopted child in respect of its relationship with the adoptive parent, does not go beyond that. The legislative intention was clear, we think, to create the relationship of parent and child between the child and its adoptive parents, but not to draw others into its orbit. *Hayes' Estate* so holds.

But counsel for the defendants insist that, even though under *Hayes' Estate* an adopted child does not inherit from the kindred of his adopted parents, it does not follow that the reverse is true. They urge that in order to reach the conclusion that the defendant is not entitled to inherit, it is necessary to read into the statute another exception in addition to the two that are expressed. In support of this contention they refer to the statement in *Buell's Estate*, 167 Or. at p. 303, that there is a strong presumption that no other than the expressed exceptions was intended. As we understand the argument, it is based upon the premise that the statute grants inheritance rights as between the adopted child and the kindred of its parents by adoption; that the effect of the second exception is to withhold a portion of such rights from the adopted child; but that there is no such exception with respect to the rights of the kindred of the adoptive parents, and none can be implied.

We think the premise is a mistaken one, but, before stating our views upon this contention, we should observe that in our opinion *Buell's Estate*, upon which the defendant relies quite heavily, is not authority for his position. That case was not concerned even remotely

with the right of inheritance by "strangers to the contract of adoption". The question there was whether an adopted child was a "lineal descendant" of the adoptive parent within the meaning of our anti-lapse statute, § 18-604, O. C. L. A., and we held that he was, and as such took a bequest made by will to his adoptive father who died before the testator. It was in that connection that the court said:

"By our statute, the adoptee is to be deemed a natural child for the purposes of inheritance and all other legal consequences and incidents of the natural relation. To this generalization there are two express exceptions. There is therefore a strong presumption that no other exception is intended. Kruckman v. Smith, 126 Or. 395, at 398, 270 P. 474 (1928). The provisions of the anti-lapse statute define certain 'legal consequences and incidents of the natural relation' which are not within the exceptions of the adoption laws. Those provisions therefore inure to the benefit of an adoptee. This conclusion is supported by the authorities." (167 Or. 303)

■ The language of the opinion is to be interpreted in the light of the facts of the case and the question for decision; beyond that it would be obiter.

The argument of the defendants just outlined is based, as we think, upon a misconception of the ground of decision in *Hayes' Estate* and the cases from other jurisdictions which it follows. It is not the holding of these cases that a right of inheritance from the adoptive parent's kindred, elsewhere granted by the statute to the adopted child, is taken away by the exceptions or either of them. It is not decided that, but for the exceptions, the adopted child would have such a right. On the contrary, it is held that the statute nowhere creates such a right; that the relationship which arises from

the act of adoption is solely between the adoptive parents and the child, and that the exceptions were intended to impose a limitation upon "the legal consequences and incidents" of that relation. Included among these would be the right to take property from the kindred of the parent by adoption "by right of representation", which "takes place when the lineal descendant of any deceased heir takes the same share or portion of the estate of an intestate that the parent of such descendant would have taken if living." § 16-402, O. C. L. A. See *In re Preston's Estate,* 157 Or. 631, 651, 73 P. (2d) 369. The meaning and effect of the exceptions are clearly explained in *Batcheller-Durkee v. Batcheller,* supra, 39 R. I. 61, where the court said:

"In order to have the effect claimed by appellant's counsel the exception must be such as to justify the implication that the right of inheritance from the kindred of the adopting parent was in the statute before the exception. While the exception may properly be considered in ascertaining the true meaning of the statute, it cannot put in to the previous provision something which was not there before. It cannot *ipso facto* create therein a right of inheritance from such kindred. The language of the exception therefore is to be considered in connection with the other provisions of the statute in arriving at the true meaning of the whole statute.

"The statute establishes the relation of parent and child between the adopting parent and the child adopted, gives to the adopted child the right of inheritance, and then by the exceptions forbids the taking by such child of property expressly limited to the heirs of the body or bodies of the parents by adoption or property from the lineal or collateral kindred of such parents by right of representation, thus disposing of all the ways by which a child would take property through the

utilization of his direct relationship to a parent, leaving him the right of inheritance from the parent by adoption and barring his right to take property expressly limited to the heirs of the body of such parent, or from the lineal or collateral kindred of such parent by right of representation, *i. e.*, by standing in his place. The exception deals with the inheritance of property from lineal or collateral kindred only to forbid its inheritance through the relation of the adopted child to the parent by adoption, and the property of lineal or collateral kindred is in no other way involved.

"The language of the exceptions all seems to be directed to inheritance by reason of the relation of the adopted child. to the parent by adoption. This is what would naturally be expected from the nature of the proceeding provided by the statute. The parent by adoption and the child adopted are the only parties to the adoption and the relation between them established thereby the only relation considered."

The Wisconsin court in *Estate of Bradley,* 185 Wis. 393, 201 N. W. 973, 38 A. L. R. 1, was called upon to deal with a similar contention in construing the statute of that state, which contains the first, although not the second, exception of our statute, but otherwise is practically identical with ours, and said (185 Wis. 401):

"This phrase constitutes an exception and it denotes a withholding of some part of that which is granted. *That which is granted to the adoptive child by sec. 4024 is the right to inherit from his adoptive parents, and this exception simply withholds from him a portion of that complete right of inheritance.*" (Italics supplied)

To the same effect is the recent case of *In re Cap-*

*tain's Estate,* supra, in which the court said (191 Okla. 465):

"The subject matter under legislative consideration was parent and child, not the relationship between an adopted child and a natural child."

■ This being so, the exceptions in our statute cannot be used to bring about the result insisted upon by counsel for the defendants; and the argument that the defendant is entitled to inherit because no other than the expressed exceptions was intended, based as it is upon an erroneous conception of the subject-matter to which the exceptions apply and the purpose which they are intended to serve, must fail. That argument cannot be approved without, in effect, overruling *Hayes' Estate.*

Counsel for the defendants further urge that the construction placed upon the statute by the State Land Board conflicts with the rule that escheats are not favored in the law. *In re Wakefield's Estate,* 161 Or. 330, 336, 87 P. (2d) 794, 89 P. (2d) 592; *Carpenter v. Buffalo General Electric Co.,* 213 N. Y. 101, 106 N. E. 1026, Ann. Cas. 1916C, 754; *Shepherd v. Murphy,* 332 Mo. 1176, 61 S. W. (2d) 746. They say that the provision of § 63-408, O. C. L. A., that "the parents of an adopted child shall be deprived by the same of all legal rights as respects the child", cuts off the rights of the natural parents to inherit from the adopted child, and that the legislature cannot be presumed to have intended that the estate of an adopted child, who had died intestate after the death of his parents by adoption, should escheat rather than go to the kindred of such parents.

We may assume for present purposes that § 63-408 has the meaning attributed to it by counsel, although

it has been held, construing an identical statute, that "the rights of which the natural parents are deprived respect the child itself and not their property or their right to inherit from him". *Hole v. Robbins,* 53 Wis. 514, 519, 10 N. W. 617; *Dodson v. Ward,* 31 N. M. 54, 240 P. 991, 42 A. L. R. 521. Numerous cases, however, which seem to represent the weight of authority, take the contrary view. *In re Havsgord's Estate,* supra; *In re Enyart's Estate,* supra; *In re Jobson's Estate,* supra; *Shepherd v. Murphy,* supra; *Alexander v. Lamar,* 188 Ga. 273, 3 S. E. (2d) 656, 123 A. L. R. 1032, with annotation at p. 1038.

■ We recognize the force of the suggestion based upon the unfavorable view which the law takes of escheats. But we think the court is not warranted in inferring an intention on the part of the legislature to confer inheritance rights on the kindred of adoptive parents from the mere fact that the statute has deprived the natural parents of such rights. Certainly, if it be true, as *Hayes' Estate* holds, that the relationship created by adoption under our statute is personal between the parties to the adoption, we cannot now liberalize the statute and bring others into that relationship in order to prevent a result which is, perhaps, as distasteful to the court as to counsel for the defendants.

■ Adoption is controlled wholly by statute (*Furgeson v. Jones,* supra; *Long v. Dufur,* supra; *Williams v. Capparelli,* supra) as are the descent and distribution of intestate property. *Cordon v. Gregg,* 164 Or. 306, 310, 97 P. (2d) 732, 101 P. (2d) 414; *In re Estate of Miller,* 117 Or. 399, 405, 244 P. 526. We must take the adoption statute as we find it. If it has features which do not accord with the enlightened humanitarianism of our day, that is a matter of policy, which is in the

keeping of the legislature and not the courts. If, by making an adopted child a member of the family in every sense, adoptions will be encouraged, that likewise is a consideration of policy. The legislature is now sitting, and may in its wisdom see fit so to amend the statute as to bring it into harmony with what some may think to be the better social policy of the age in which we live.

In this connection it should be noted that in California, which has a statute like our § 63-408, it is held that, while an adopted child's right of inheritance from his natural parents is cut off, the adoption "has no effect at all as to the rights of the child in so far as the ancestor or collateral kindred of its parents are concerned". *In re Darling's Estate,* 173 Cal. 221, 227, 159 P. 606. It is not suggested, and we see no reason for thinking, that our statute should receive a different construction. Furthermore, the opinion in that case approves the view that in the absence of special provision an adopted child cannot inherit from the collateral kindred of its adopted parents, nor from the ancestor of such parents, nor from their natural children, and states that adoption "affects only the relative rights of inheritance of the parties to the contract, the parents by blood, the adopting parents, and the child" (173 Cal. 227), which is precisely the holding of *Hayes' Estate.* We call attention to this decision because counsel for the defendants have quoted in their brief from the earlier California case of *In re Jobson,* supra, the following language upon which they apparently rely as supporting their position:

"From the time of adoption, the adopting parent is, so far as concerns all legal rights and duties flowing from the relation of parent and child, the parent of the adopted child."

In view of the case of *In re Darling's Estate,* supra, it is evident that the California court did not intend, by the foregoing language, to imply that any other than the immediate parties to the adoption are affected by it. See, also, *In re Jones' Estate,* 3 Cal. App. (2d) 395, 39 P. (2d) 847.

A further contention of the defendant, much stressed in argument, is based upon the policy of our jurisprudence, reflected in our statute of descent and distribution, that the property of an intestate descends to kindred of his blood. This principle is referred to in *Hayes' Estate,* 161 Or. at p. 32. That policy would be violated, it is said, by permitting property received by the child from its adoptive father to go to the state, instead of keeping it in the family by awarding it to the defendant.

Much of what we have said in answering the defendant's contention based on the reluctance of courts to declare escheats is applicable here. Beyond that, while most of the property of the intestate came from his adoptive father either by inheritance or as the proceeds of insurance policies, a substantial sum consisted of his own earnings, and we are not told whether the court is authorized to make a distinction between the two classes of property based on the source from which it was derived. Neither are we told whether a different rule should be applied in the readily conceivable case of an estate consisting entirely of personal property, none of which was inherited or otherwise acquired from an adoptive parent. The ancestral property provision of our statute, § 16-101 (5), O. C. L. A., it has been held, applies only to real property. *Cordon v. Gregg,* supra. If Jack Rollins Frazier had left an estate consisting of real estate, it might well be that

a different result would be compelled by the terms of the statute just referred to, although, if so, that would not be because the adoption statute, by its own terms, was effective to bring the adopted child into legal relationship with the defendant. The policy of the law under consideration was referred to in *Hayes' Estate* as calling for clear language in the statute showing a legislative intention that an adopted child should inherit from the relatives of his adoptive father before the court would be authorized so to declare. It was an added reason for the decision, although not the controlling one. And the case was not concerned with throwing back property to the line from which it came. As to the difficulties involved in attempting to apply the ancestral property rule to personal property, as well as the want of statutory authority "to introduce a peculiar rule of descent for property acquired by the adopted child from the adopting parents", see *Baker v. Clower,* supra.

We have examined the cases cited in the ably prepared brief of counsel for the defendants. We shall not discuss them all in detail. Some, which are authority for the right here claimed, are based on express statutory provisions granting that right. Among these are *Bishop v. Smith,* 223 Iowa, 817, 273 N. W. 891, and *In re Fitzgerald's Estate,* 223 Iowa, 141, 272 N. W. 117, which construe the statute of Iowa as it was amended after the decision in *Baker v. Clowser,* supra. Also in this category are *Carpenter v. Buffalo General Electric Co.,* supra, and *Coffman v. Howell,* supra. Some of the cited cases go no further than to hold that the adoptive parent inherits from the child. *Calhoun v. Bryant,* 28 S. D. 266, 133 N. W. 266; *In re Jobson's Estate,* supra; *In re Enyart's Estate,* supra; *Humphries v. Davis,* 100 Ind. 274, 50 Am. Rep. 788; *Paul v. Davis,*

100 Ind. 422. In the last two cases it was held that property inherited by the adopted child from one adoptive parent passed to the other adoptive parent on the death of the child.

*In re Havsgord's Estate,* supra, is mistakenly said, in the brief of the defendants, to hold that the property of a deceased adopted child, which came to him from the adoptive father, went to the latter's brother and sister and not to the natural father. In fact, the decision was narrowly limited to a holding that the natural parent was not entitled to inherit. This is made clear by the following statement in the opinion:

"We express no opinion upon any question other than the natural father's right of inheritance in the estate of the decedent; neither is anything herein said to be taken as an intimation of the views of the court upon the rights of an adopted child to inherit from any relative, either natural or adoptive, nor of the rights of any relative either natural or adopted, other than the natural parent, to inherit from an adopted child." (34 S. D. 136)

*In re Masterson's Estate,* 108 Wash. 307, 183 P. 93, holds that an adopted child inherits from his foster brother. The decision is in conflict with *Hayes' Estate,* although there is a provision in the Washington statute not found in ours which affords a basis for distinguishing the case.

*Brewer v. Browning,* 115 Miss. 358, 76 So. 267 L. R. A. 1918F, 1185, Ann. Cas. 1918B, 1013, based on a statute no broader than that of Oregon, appears to support the defendant's position, at least to the extent that it holds that propery inherited by the child from its adoptive parents will pass to the latter's kindred on the death of the child. The recent case

of *Shepherd v. Murphy,* supra, contains a similar holding. In considering this case it is to be observed that the Missouri court in *Hockaday v. Lynn,* supra, construing a different statute, had placed the same meaning upon it as did this court in *Hayes' Estate* in construing the Oregon statute. In 1929 the statute was amended for the evident purpose of broadening and liberalizing it. § 14079, Mo. Rev. Stat. 1929. One provision of the amended statute is:

> "Said child shall thereafter be deemed and held to be *for every purpose,* the child of its parent or parents by adoption, as fully as though born to them in lawful wedlock."

The court, in its opinion, emphasized the words which we have italicized, and we think that it must have appeared to the Missouri court that it was the purpose of the legislature to enact a statute based upon a more liberal adoption policy than that of the statute construed in *Hockaday v. Lynn,* supra.

Our adoption statute was enacted in 1864, and, so far as any question presented in this case is concerned, has remained unchanged. The provisions which we are called upon to construe necessarily have the same meaning that they had when the legislature passed them. The most appealing argument that has been made on behalf of the defendant is based upon the humane aspects of the adoption institution and the desirable policy to be pursued—an argument which in the end touches what the law ought to be, not what it is. In the case of *In re Estate of Miller,* supra, 117 Or. 405, this court said:

> "In order to change the regular statutory rule of descent there should be a plain, definite legislative enactment to that effect."

The legislature seems to have recognized this rule in enacting the adoption statute, for it did not stop with the provision in § 63-406 that the decree of adoption shall order ''that from the date of the decree the child shall, to all legal intents and purposes, be the child of the petitioner'', but proceeded in § 63-407 to confer expressly the right of inheritance on the child only from his parents by adoption only, evidently thinking that such declaration was necessary and that the existence of the right could not safely be left to inference. See, *Hole v. Robbins,* supra. We do not wish to be understood as saying that the right of the adoptive parents to inherit cannot be implied as the Wisconsin court held in the cited case. But we do hold that, since the subject-matter of the statute is a legal relation created between, and confined to, the child and its parents by adoption, to extend that relation to others by court decision would be not to construe the statute but to enlarge it beyond its fair import—in effect, to amend it.

The Oklahoma case of *In re Captain's Estate,* supra, was decided after *Hayes' Estate.* It holds that an adopted child is not the heir of the natural child of her deceased parent by adoption. Construing a statute, one of the provisions of which is not substantially different from § 63-407, O. C. L. A., the opinion states that the courts of Illinois, New Hampshire, Rhode Island, Wisconsin and Oregon are in accord; while in some of the other states, under much broader statutory provisions, a different result has been reached. The whole reasoning of the court in this case fully supports the view we have taken of the proper construction of our statute. See, also, *Re Estate of A. F. Harrington,* 96 Utah 252, 85 P. (2d) 630, 120 A. L. R. 830, with annotation at p. 837.

It should be observed in conclusion that in a number of the states it has been found necessary, as already indicated, to create by express enactment rights of inheritance such as are here asserted on behalf of the defendant. Statutes of this type are set out and construed in the following cases: *Carpenter v. Buffalo General Electric Co.*, supra (N. Y.); *Estate of Hood*, 206 Wis. 227, 239 N. W. 448; *O'Connell v. Powers*, 291 Mass. 153, 197 N. E. 162 (adopted children inherit from each other); *In re Fitzgerald's Estate*, supra, and *Bishop v. Smith*, supra (Iowa); *In re Warr's Estate*, supra (Colorado). These statutes no doubt reflect the modern legislative policy toward the subject of adoption. And, as we view it, they serve to point up the need for such legislation in Oregon if that policy is to prevail in this state.

■ By § 16-102 (5), O. C. L. A., which relates to the distribution of intestate personal property, it is provided:

"If there be no husband, widow, or kindred of the intestate, the whole of such residue shall escheat to the state of Oregon."

In view of this statute and the construction which we have placed upon the adoption statute, it follows that the clear proceeds of the estate of Jack Rollins Frazier, deceased, must escheat to the state.

The decree of the Circuit Court is therefore affirmed. Costs and disbursements of the parties will be paid out of the moneys of the estate.